**Donald WELLS and Emma Wells, Appellants,**

v.

**AMERICAN STATES PREFERRED INSURANCE COMPANY, Appellee.**

No. 05–95–00200–CV.

Court of Appeals of Texas, Dallas.

Jan. 29, 1996.

Thomas M. Richards, Smith Merrifield & Richards, L.L.P., Dallas, Dixon Jace Reynolds, Bush, Fulton, Hurlbut & Morrison, P.C., Arlington, Gayle E. Oler, Dallas, for Appellants.

Wesley W. Chambers, Gollaher & Chambers, Dallas, for Appellee.

Before LAGARDE, BARBER and WHITHAM [1], JJ.

## OPINION

WHITHAM (Retired), Justice.

Appellants, Donald Wells and wife, Emma Wells, appeal from a summary judgment in favor of appellee, American States Preferred Insurance Company. The principal issues involve the appraisal provision of the Texas Homeowner's Policy and the interpretation and consequences of the appraisal made pursuant to that insurance policy. The issues focus upon the question of whether the appraisers are authorized and empowered to determine what caused or did not cause the loss claimed. Here, the policy insured the dwelling against foundation and structural

1. The Honorable Warren Whitham, Justice, Retired, Court of Appeals, Fifth District of Texas at Dallas, sitting by assignment.

damage due to foundation movement caused by leaks in the plumbing system. The Wellses assert the dwelling suffered foundation and structural damage caused by a plumbing leak. The Wellses made a claim on the policy. American States denied the claim, demanded an appraisal, and then sued to require an appraisal. The Wellses counterclaimed on the policy and on other causes of action. The trial court abated the counterclaim until an appraisal was done. The two appraisers and an umpire determined that the resulting damage to the dwelling due to foundation movement was $22,875.94. However, one appraiser and the umpire also determined that the plumbing leak caused no loss; *i.e.*, that the plumbing leak did not cause the damage. Based on this latter determination, the trial court entered a take-nothing summary judgment against the Wellses. Because we conclude that the appraisal section of the policy, as a matter of law, did not authorize the appraiser and umpire to determine that the plumbing leak did not cause the damage and loss to the Wellses' property, we conclude that the trial court erred in entering a take-nothing judgment against the Wellses. Accordingly, we reverse and remand.

### Factual Background

Donald and Emma Wells own a home in Wylie, Texas. American States insured the home under a Texas Homeowner's Policy. The policy contained the following provision for determining the amount of loss by appraisal at request of either party:

7. **Appraisal.** If you and we fail to agree on the actual cash value, amount of loss or the cost of repair or replacement, either can make a written demand for appraisal. Each will then select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers will choose an umpire. If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a district court of a judicial district where the loss occurred. The two appraisers will then set the amount of loss, stating separately the actual cash value and loss to each item. If

you or we request that they do so, the appraiser will also set:

a. the full replacement cost of the dwelling.

b. the full replacement cost of any other building upon which loss is claimed.

c. the full cost of repair or replacement of loss to such building, without deduction for depreciation.

If the appraisers fail to agree, they will submit their difference to the umpire. An itemized decision agreed to by any two of these three and filed with us will set the amount of the loss. Such award shall be binding on you and us.

Each party will pay its own appraiser and bear the other expenses of the appraisal and umpire equally.

When their home sustained damage due to foundation movement, the Wellses investigated. They discovered a leak in the plumbing system underneath the foundation. A structural engineer who examined the property reported that the plumbing leak caused the foundation movement. On April 20, 1992, the Wellses made a claim on the policy. An adjuster from American States inspected the property and stated that the sewer-line leak did not cause the damage. The adjuster included that statement on a written non-waiver agreement dated May 7, 1992, which Donald Wells signed only after noting on the writing his disagreement with the statement. American States then had its own engineer examine the property, who reported that the plumbing leak did not cause the foundation movement, conflicting with the report from the Wellses' engineer as to causation of the loss.

On July 20, 1992, American States again denied the Wellses' claim and at the same time demanded an appraisal under the "Appraisal" section quoted above, designating John O. Lochridge, Jr. as its appraiser. American States then sued for a declaratory judgment that it had properly invoked the appraisal provisions of the policy. American States also asked for an order requiring the Wellses to submit their claim to appraisal. The Wellses answered and filed a counterclaim on the policy and on other causes of

action. American States responded with a first supplemental petition containing a plea that the Wellses' counterclaims be abated until they participated in an appraisal and the appraisal was completed. The trial court sustained the plea in abatement. Thereafter, the Wellses designated Rob Brown as their appraiser, and the two appraisers designated Mitchell L. Butler as umpire.

Both appraisers and the umpire unanimously determined that the Wellses' home had resulting damage to the dwelling due to foundation movement in the amount of $22,875.94. However, appraiser Lochridge and umpire Butler determined that damage to the dwelling related to the plumbing leak was zero.

American States then filed its motion for summary judgment based on the appraisal determination that the plumbing leak did not cause the loss claimed. The Wellses filed their own motion for partial summary judgment based on the unanimous determination of the appraisers and umpire that the amount of loss to the dwelling resulting from foundation movement was $22,875.94. American States responded to the Wellses' motion, and the Wellses responded to American States's motion. The trial court granted American States's motion, denied the Wellses' motion, and rendered a take-nothing summary judgment against the Wellses.

The trial court's summary judgment contains this language:

> The court further finds that [American States] is entitled to a Declaratory Judgment maturing the appraisal award rendered herein, into a final judgment as requested and prayed for in [American States's] Summary Judgment and thus, it is further ORDERED, ADJUDGED and DECREED that Declaratory Judgment be, and the same hereby is, rendered in favor of [American States] and against [the Wellses], that the appraisal award rendered on or about June 24, 1994 is binding on and enforceable against [the Wellses], that said appraisal award's finding that the amount of loss is zero be matured into final judgment, and judgment is hereby RENDERED that [American States] is not lia-

ble to [the Wellses] on [the Wellses'] insurance claim made the basis of this suit.

## Summary Judgment Principles

■ We begin by repeating well-known rules governing the summary judgment practice. The function of a summary judgment is not to deprive a litigant of his right to a full hearing on the merits of any real issue of fact, but to eliminate patently unmeritorious claims and untenable defenses. *Gulbenkian v. Penn*, 151 Tex. 412, 415–16, 252 S.W.2d 929, 931 (1952). The standards for reviewing a motion for summary judgment are well established. As mandated by the Supreme Court of Texas, they are as follows:

> 1. The movant for summary judgment has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.
> 2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true.
> 3. Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor.

*Nixon v. Mr. Property Management*, 690 S.W.2d 546, 548–49 (Tex.1985). It is not the purpose of the summary judgment rule to provide either a trial by deposition or a trial by affidavit, but rather to provide a method of summarily terminating a case when it clearly appears that only a question of law is involved and that there is no genuine issue of fact. *Gaines v. Hamman*, 163 Tex. 618, 626, 358 S.W.2d 557, 563 (1962).

■ Moreover, when the counterclaim defendant is the movant, as in the present case, we must be alert to additional rules controlling summary judgment practice. The question on appeal, as well as in the trial court, is not whether the summary judgment proof raises fact issues with reference to the essential elements of a counterclaim plaintiff's cause of action, but is whether the summary judgment proof establishes as a matter of law that there is no genuine issue of fact as to one or more of the essential elements of the counterclaim plaintiff's cause of action. *Gibbs v. General Motors Corp.*, 450 S.W.2d 827, 828 (Tex.1970). Therefore, a counter-

claim defendant is entitled to a summary judgment if he establishes, as a matter of law, that at least one element of counterclaim plaintiff's cause of action does not exist. *See Rosas v. Buddies Food Store*, 518 S.W.2d 534, 537 (Tex.1975).

■ Furthermore, summary judgment is not entitled to the same deference given to a judgment following a trial on the merits. *Elam v. Yale Clinic*, 783 S.W.2d 638, 641 (Tex.App.—Houston [14th Dist.] 1989, no writ). Unlike an appeal following a trial on the merits, when reviewing a summary judgment, the appellate court does not view the evidence in the light most favorable to the judgment of the trial court. *Elam*, 783 S.W.2d at 641. With these principles in mind, we turn to consider the Wellses' first point of error in which the Wellses contend that the trial court erred in granting American States's motion for summary judgment.

### The Appraisal Award

■ In the present case, the Wellses insist that the appraisal section of the policy, as a matter of law, did not authorize the appraisers and umpire to determine that the plumbing leak did not cause the loss to the Wellses' property. Thus, we reach the question whether the appraisal section of the policy, invoked by American States, authorized and empowered the appraisers to determine what caused or did not cause the loss claimed. It is obvious that two of the three designated persons named to make the appraisal determined that the Wellses' amount of loss *also* included authority to determine that the loss was not caused by the undisputed plumbing leak. We reach this conclusion because the "Appraisal Award" recites:

Damage to dwelling related to plumbing leak.

Loss Replacement Cost –0–

Loss Actual Cash Value –0–

· · · · ·

CLARIFICATIONS IF ANY: Resulting damage to dwelling due to foundation movement $22,875.94

We note the appraisal award's language "Damage to dwelling related to plumbing leak," and followed by two loss figures of "0."

We interpret this language as a determination that the "plumbing leak" was not the cause of any damage, hence the two "Loss" findings of "–0–." We reach the interpretation because the appraisal award proceeds to determine the *cause* of damage to the dwelling to be due to "foundation movement." Taken in the context of this litigation, we treat "Damage to dwelling" and "Loss" to be one and the same. Therefore, for the reasons that follow, we conclude that the appraisal section of the policy invoked by American States does not authorize and empower the appraisers to determine what caused or did not cause the loss claimed.

### Helpful Texas Cases

■ In reaching this conclusion, we find language in certain Texas cases to be instructive. An appraisal award made pursuant to the provisions of an insurance contract is binding and enforceable. *Barnes v. Western Alliance Ins. Co.*, 844 S.W.2d 264, 267 (Tex.App.—Fort Worth 1992, writ dism'd by agr.). Texas courts recognize three situations in which an appraisal award may be disregarded: (1) when the award was made without authority; (2) when the award was the result of fraud, accident, or mistake; or (3) when the award was not made in substantial compliance with the terms of the contract. *Providence Lloyds Ins. Co. v. Crystal City Indep. Sch. Dist.*, 877 S.W.2d 872, 875 (Tex.App.—San Antonio 1994, no writ). The effect of an appraisal award is to estop one party from contesting the issue of damages in a suit on the insurance contract, leaving only the question of liability for the court. *Scottish Union & Nat'l Ins. Co. v. Clancy*, 71 Tex. 5, 8 S.W. 630, 631 (1888); *Hennessey v. Vanguard Ins. Co.*, 895 S.W.2d 794, 797–98 (Tex.App.—Amarillo 1995, writ denied). Although every reasonable presumption will typically be made in favor of an appraisal award, when reviewing a summary judgment proceeding, that rule must yield to the degree its application conflicts with the presumptions required to be made in favor of a nonmovant. *Hennessey*, 895 S.W.2d at 798.

The parties agree that no reported Texas case has decided the issue of whether the authority of appraisers under the appraisal

section of an insurance policy is limited to determination of only the *amount* of loss as distinguished from determining *cause* of loss, and *coverage* and *liability* for the loss. We conclude, however, that the weight of authority from other jurisdictions discussing the issue follows the rule that appraisers have no power or authority to determine questions of causation, coverage, or liability, which is consistent with the Texas courts' discussion of the effect of the appraisal award. *See Scottish Union*, 8 S.W. at 631; *Hennessey*, 895 S.W.2d at 798.

### Applicable Holdings of Other Jurisdictions

We have considered the holdings of other jurisdictions interpreting appraisal provisions containing substantially similar language to that contained in the policy at issue in this case in concluding that appraisers have no power to determine the cause of the damages. Their power is limited to the function of determining the money value of the property damage. *Munn v. National Fire Ins. Co. of Hartford*, 237 Miss. 641, 115 So.2d 54, 55, 58 (1959) ("The chancellor should have judicially determined what force caused the walls to lean and twist[;] [t]hat was not a question for the appraisers to decide. If that damage was the result of the storm, then the appraisers should have been directed to estimate the value of the loss occasioned by the walls being damaged."); *see also Jefferson Ins. Co. of N.Y. v. Superior Court*, 3 Cal.3d 398, 90 Cal.Rptr. 608, 475 P.2d 880, 883 (1970) (the function of the appraisers is to determine the amount of damage resulting to various items submitted for their consideration, and not to resolve questions of coverage and interpret provisions of the policy, which exceed the scope of their powers); *Appalachian Ins. Co. v. Rivcom Corp.*, 130 Cal.App.3d 818, 182 Cal.Rptr. 11, 16 (Ct.App. 2d Dist.1982) (the appraisal clause provides the device to be utilized to determine the amount of loss if the parties cannot agree on the amount; once the amount of the loss has been fixed, whether by agreement between insurer and insured or by appraisal procedure, if the insurer refuses to pay such amount, the insured is not without jury trial rights); *Lewis Food Co. v. Fireman's Fund*

*Ins. Co.*, 207 Cal.App.2d 515, 24 Cal.Rptr. 557, 561 (Ct.App. 2d Dist.1962) (the appraisers' function under the policy is to determine the amount of damage resulting to various items submitted for their consideration; it is certainly not their function to resolve questions of coverage and interpret provisions of the policy); *Oakes v. Franklin Fire Ins. Co.*, 122 Me. 361, 120 A. 53, 54 (1923) (the right of the insured to recover the loss is not submitted to the referees, only the amount of the damages); *Wausau Ins. Co. v. Herbert Halperin Dist. Corp.*, 664 F.Supp. 987, 989 (D.Md.1987) (where insurer does not factually dispute the consequences of the occurrence, but contests the issue of legal "causation" on the basis that the policy exclusions apply so as to limit the scope of coverage, the issue is one of contract interpretation, and is within the competence of the court, not an appraiser, to resolve); *Hogadone v. Grange Mut. Fire Ins. Co.*, 133 Mich. 339, 94 N.W. 1045, 1047 (1903) (the policy provision relates only to cases of disagreement as to the amount of valuation, in whole or in part, and not whether the claim itself is valid); *Denton v. Farmers' Mut. Fire Ins. Co.*, 120 Mich. 690, 79 N.W. 929, 930 (1899) (the sections of the charter do not give board of auditors the power to pass upon questions of liability, but contemplate a valid loss, and confer upon the auditors only the power to fix the amount); *St. Paul Fire & Marine Ins. Co. v. Wright*, 97 Nev. 308, 629 P.2d 1202, 1203 (1981) (contrary to arbitration, where the arbitrator is frequently given broad powers, appraisers generally have more limited powers; an appraiser's power generally does not encompass the disposition of the entire controversy between the parties, but extends merely to the resolution of the specific issues of actual cash value and the amount of loss); *In re Delmar Box Co.*, 309 N.Y. 60, 127 N.E.2d 808, 811 (1955) (agreement for appraisal extends merely to the resolution of specific losses of actual cash value and the amount of loss, with all other issues being reserved for determination in a plenary action); *United Boat Serv. Corp. v. Fulton Fire Ins. Co.*, 137 N.Y.S.2d 670, 671 (Sup.Ct.1955) (where appraisers made a determination of a question of liability, they exceeded the powers con-

ferred upon them, and summary judgment is improper); *Kentner v. Gulf Ins. Co.,* 66 Or. App. 15, 673 P.2d 1354, 1356 (1983) (statutory policy language establishes an appraisal procedure to determine the amount of the insured's loss; the procedure does not apply to the determination of the insurer's responsibility).

### Application of the Law

With the above cases in mind, we look to the first sentence of the appraisal clause at issue in the present case. We quote:

> If you and we fail to agree on the *actual cash value, amount of loss,* or the *cost of repair or replacement,* either can make a written demand for appraisal.

(Emphasis added.) Hence, we must conclude that the appraisal clause at issue pertains to a dispute over the amount of money involved in the controversy. Indeed, we read the phrases "actual cash value," "amount of loss," and "cost of repair or replacement" as triggering the demand for appraisal. It cannot be doubted that these are "dollar" controversies. Thus, nowhere do we read a "causation dispute" or a "liability dispute" as the means or manner by which the demand for appraisal can be made operative.

■ We conclude that the authority of the appraisal panel in the present case was limited to determining only the amount of loss. Therefore, we conclude further that the appraisal section of the policy, as a matter of law, did not authorize and empower the appraisal panel to determine that the plumbing leak did not cause the loss to the Wellses' property. It follows, and we so hold, that the appraisal section of the Texas Homeowner's Policy quoted above establishes an appraisal procedure to determine the dollar amount of the insured's loss only, and that it does not authorize or empower the appraisal panel created thereunder to determine what caused or did not cause that loss. Indeed, we hold that, absent an agreement to the contrary, questions of what caused or did not cause the loss are questions to be decided by the court. Moreover, we hold that participation by the insured in the appraisal process does not constitute agreement by the insured to authorize and empow-er the appraisal panel to determine questions of what caused or did not cause the loss.

■ In the present case, we conclude that the one appraiser and the umpire exceeded their authority when they determined that the plumbing leak did not cause the Wellses' loss. It follows, and we so hold, that the trial court erred in finding that American States is entitled to a declaratory summary judgment maturing the appraisal award in the present case and entering a take-nothing summary judgment against the Wellses based upon that determination. Indeed, an appraiser's acts in excess of the authority conferred upon him by the appraisal agreement are not binding on the parties. *Fisch v. Transcontinental Ins. Co.,* 356 S.W.2d 186, 190 (Tex.Civ.App.—Houston 1962, writ ref'd n.r.e.). Instead, the effect of an appraisal award is to estop one party, here the plaintiff, from contesting the issue of damages in a suit on the insurance contract, leaving only the question of liability for the court. *Scottish Union,* 8 S.W. at 631; *Hennessey,* 895 S.W.2d at 797–98.

In the present case, we note that nowhere in the standard form for submission to appraisal is any power vested in or conferred upon the appraisers to determine the cause of the loss, the value of which they are to appraise. *See Munn,* 115 So.2d at 56. Therefore, we hold, as did the Supreme Court of Mississippi, that the appraisers are not arbitrators. They have no power to arbitrate disputes between the property owner and the insurance company, other than to value the property damage. *Munn,* 115 So.2d at 56. Indeed, the function of the appraisers is to determine the amount of damage resulting to the property submitted for their consideration. It is certainly not their function to resolve questions of coverage and interpret provisions of the policy. *St. Paul Fire & Marine Ins. Co.,* 629 P.2d at 1203. Consequently, we conclude that the trial court erred in granting American States's motion for summary judgment. We reach this conclusion because the appraisal section of the policy, as a matter of law, did not authorize the appraisers and umpire to determine that the plumbing leak did not

cause the loss to the Wellses' property. We sustain the Wellses' first point of error.

### The Wellses' Partial Motion for Summary Judgment

In their second point of error, the Wellses contend that the trial court erred in overruling their partial motion for summary judgment. The Wellses advance three principal arguments. First, the Wellses argue that the appraisal panel has no authority to determine the cause of the loss, only the amount of the loss. We have held in disposition of the Wellses' first point of error that the appraisal panel has no authority to determine the cause of the loss, only the amount of the loss. Thus, we agree with the Wellses' first argument.

While we agree with the Wellses' first principal argument, we are unable to extend that agreement to the thrust of the Wellses' second principal argument. In that second argument, the Wellses reason that the $22,875.94 damage figure stated in the appraisal award under the language:

CLARIFICATIONS IF ANY: Resulting damage to dwelling due to *foundation movement* $22,875.94

(Emphasis ours.) becomes the damage award for the previously mentioned "plumbing leak," instead of the figure "–0–" (zero). Hence, the Wellses argue that the appraisal panel ascertained the amount of damages of $22,875.94 as resulting from the plumbing leak. We disagree. We note that the damage amount of $22,875.94 results from "foundation movement."

"Foundation movement" appears to be excluded by the policy:

We do not cover loss under Coverage A (Dwelling) caused by settling, cracking, bulging, shrinkage, or expansion of *foundation,* walls, floors, ceilings, roof structures, walks, drives, curbs, fences, retaining walls or swimming pools.

(Emphasis ours). Consequently, we decline to read the appraisal award, as the Wellses would have us do, to say that a plumbing leak caused foundation damage to their dwelling in the amount of $22,875.94. We decline to do so because the appraisal panel, on the face

of its award, separated the damage related to plumbing leak from damage due to foundation movement. For these reasons, we disagree with the Wellses' second principal argument under their second point of error.

Lastly, we dispose of the Wellses' third principal argument under their second point of error. Here, the Wellses insist that they are entitled to our determination that they recover their reasonable and necessary attorney's fees incurred in this litigation, the amount thereof to be determined at trial. In light of our disposition of this appeal, all issues in dispute between the parties will be before the trial court on remand for new trial. Therefore, we conclude that we have no basis at this time to determine that the Wellses recover their reasonable and necessary attorney's fees incurred in this litigation. Hence, we decline to decide at this time the liability of American States for the Wellses' reasonable and necessary attorney's fees, if any, incurred in this litigation. For the reasons expressed above, we conclude that the trial court did not err in overruling the Wellses' partial motion for summary judgment. We overrule the Wellses' second point of error.

### Abatement and Trial On The Merits

In their third point of error, the Wellses contend that the trial court erred in abating the Wellses' counterclaim until the Wellses participated in the appraisal demanded by American States, because the Wellses were not obligated to comply with the appraisal provisions of the policy as a condition precedent to filing their counterclaim against American States. We conclude that we need not address this point of error. We reach this conclusion because the issue is now moot. We hold that the Wellses have now complied with any obligations imposed by the appraisal provisions and that their counterclaim is now properly before the court on remand. Furthermore, the time has arrived to try this case on its merits in the trial court. The appraisal has been made. The fact that the resulting appraisal is defective is of no moment; the trial court is directed to try all issues in dispute both as to liability and as to damages. The Wellses

are not required to again participate involuntarily in yet another appraisal. The Wellses have done all that was required of them as an asserted condition precedent to filing their counterclaim. We decline to penalize the Wellses by further delay when they have suffered a defective appraisal process through no fault of their own. We overrule for mootness the third point of error.

We reverse the trial court's judgment and remand the case to the trial court for trial on the merits.