Opinion issued August 9, 2007 





















In The

Court of Appeals

For The

First District of Texas






NO. 01-06-00396-CV

 __________


TAREK & RAYYAN AMINE, Appellants


V.


LIBERTY LLOYDS OF TEXAS INSURANCE COMPANY, Appellees






On Appeal from the 333rd District Court

Harris County, Texas

Trial Court Cause No. 2005-07949






MEMORANDUM OPINION

 Tarek and Rayyan Amine, appellants, and Liberty Lloyds of Texas Insurance
Company, appellee, filed cross-motions for summary judgment regarding the Texas
Insurance Code's late payment provision. (1) The trial court granted Liberty's motion
for summary judgment. On appeal, the Amines contend that the trial court erred in
failing to apply the late payment provision of the Texas Insurance Code to a claim
where the parties invoked the appraisal/umpire provision of the policy and the
insurance company timely paid the umpire's award. We affirm. 


Background

 The Amines' home was insured through Liberty, effective January 19, 2001 to
January 19, 2002. Todd Breton, Senior Property Specialist III for Liberty, testified by
affidavit that, on November 16, 2001, the Amines filed a mold claim. After an
investigation, Liberty denied the claim based on the mold exclusion in the policy. 
Four months later, Amine contacted Liberty asserting a new cause for the previous
mold claim, and, after an additional investigation, it was determined that the mold was
caused by a leak on the second floor. Liberty approved a remediation for $2748.70. 


 In November 2002, the Amines provided Liberty with a report prepared by
Unovate Engineering. The report reflected that multiple leaks in the home had
"created an environment rich for mold growth." One month later, Liberty conducted
its own investigation, and Mr. Amine identified numerous areas of water damage,
including a spot in the utility room that he had noticed prior to moving into the home;
a water heater leak from late 2001; a leak in the downstairs hall bathroom; a leak in
the master bath; and ceiling stains from a prior roof leak. Mr. Amine had not
previously reported the water heater leak or the leak in the downstairs hall bathroom. 
After the inspection, Liberty agreed that there were five claims at issue, not including
the roof leak. (2) Breton testified that, because the information provided by Mr. Amine
at the inspection, particularly regarding dates of occurrence, was "quite vague,"
Liberty requested that Mr. Amine submit to a recorded interview. He refused. His
attorney did, however, agree to "firm up the dates of loss" and provide that
information to Liberty. Liberty never received any additional details regarding the
previously unreported damage.

 In June 2003, six months after Liberty came to the house for the inspection, the
Amines submitted a settlement and demand package for the five claims with "Sworn
Statements in Proof of Loss." Despite the Amines' promise to "firm up the dates,"
each sworn statement contained the same November 16, 2001 loss date, the date that
the original mold claim was filed. The demand package included the following: water
damage resulting from the HVAC condensation pan overflow, the upstairs damage
resulting from the attic space water heater unit, the upstairs hall bathroom damage
resulting from the master bathroom tub fixture, and the utility room damage resulting
from a leak at the utility room washer connection. Each claim was for well over
$100,000. (3) Liberty made settlement offers, but the parties were unable to reach a
settlement. Breton testified that "the excessive amount of the demand, as well as the
remaining coverage questions, precluded settlement of the claims at that time," and,
on October 20, 2003, the Amines invoked the policy's appraisal clause. Specifically,
the clause provided that:

 If you and we fail to agree on the actual cash value, amount of loss, or
cost of repair or replacement, either can make a written demand for
appraisal. Each will then select a competent, independent appraiser and
notify the other of the appraiser's identity within 20 days of receipt of the
written demand. The two appraisers will choose an umpire. If they
cannot agree upon an umpire within 15 days, you or we may request that
the choice be made by a judge of a district court of a judicial district
where the loss occurred. The two appraisers will then set the amount of
loss, stating separately the actual cash value and loss to each item . . . .


 If the appraisers fail to agree, they will submit their differences to the
umpire. An itemized decision agreed to by any two of these three and
filed with us will set the amount of loss. Such award shall be binding on
you and us. 


 Both parties selected appraisers, but the appraisers could not agree on the
amount of repair and remediation costs or the selection of an umpire. A district court
judge named the umpire, and, on May 11, 2004, the umpire awarded $98,400 for the
cost to repair the five claims to the dwelling and $26,000 for the cost to replace
personal property. (4) The Amines asserted that these repair amounts should be
aggregated and demanded payment for five times the dwelling award, plus five times
the personal property award. Liberty requested clarification of the award from the
umpire, and the umpire observed that, "[i]t certainly would seem foolish to take the
same furniture and clean it five times when five claims were made at the same time for
the same furniture." Liberty timely paid the award of $124,400.

 The Amines continued to demand payment of more than $622,000, and, on
February 2, 2005, they filed suit against Liberty, alleging that Liberty failed to pay the
umpire's award and, thus, breached the terms of its policy of insurance. They further
alleged that Liberty's "untimely payment and failure to fully and fairly investigate and
pay covered claims constitute violations of Article 21.21 of the Texas Insurance
Code," and they sought "statutory penalties for failure to comply with the prompt
payment provision of article 21.55 of the Insurance Code." Liberty filed a motion for
summary judgment asserting that it had fully complied with the appraisal award in
accordance with the deadlines set forth in the Texas Insurance Code. Liberty's motion
addressed the breach of contract claims and the "extra-contractual" or "bad faith"
claims relating to former article 21.21. Liberty also argued that it was entitled to
summary judgment on the Amines' article 21.55, "prompt payment" statue, claims
because its full payment of the appraisal award precluded an award of article 21.55
penalties as a matter of law. The Amines filed a motion for summary judgment and
response to Liberty's motion for summary judgment in which they addressed only the
"prompt payment" statute claims. They argued that Liberty was required to pay the
claims by "April 4, 2002, 60 days after the February 3, 2002 acknowledgment." (5) 
Without stating its reasons, the trial court granted Liberty's motion for summary
judgment and denied the Amines'. 

Appraisal/Umpire Provision


 In their sole appellate issue, the Amines argue that the trial court erred in
granting Liberty's motion for summary judgment and failing to apply the late payment
provision of the Texas Insurance Code to a claim where the parties invoked the
appraisal/umpire provision of the policy and the insurance company timely paid the
umpire's award.

Standard of Review

 We review the granting of summary judgment de novo. See Nelson v. Cheney,
193 S.W.3d 161, 165 (Tex. App.-- Houston [1st Dist.] 2006, no pet.) In a traditional
summary judgment, the issue on appeal is whether the movant met the burden of
establishing that no genuine issue of material fact exists as to at least one element of
the non-movant's claim and that the movant is entitled to judgment as a matter of law. 
Tex. R. Civ. P. 166a(c); Cate v. Dover Corp., 790 S.W.2d 559, 562 (Tex. 1990). All
doubts about the existence of a genuine issue of a material fact are resolved against
the movant. Cate, 790 S.W.2d at 562. If the movant's summary judgment motion and
proof facially establish its right to judgment as a matter of law, the burden shifts to the
non-movant to raise a material fact issue sufficient to defeat summary judgment. City
of Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979).

 Where, as in this case, the trial court does not state the specific grounds upon
which the summary judgment was granted, the reviewing court must consider whether
any theory set forth in the motion will support a summary judgment. State Farm Fire
& Cas. Co. v. S.S., 858 S.W.2d 374, 380 (Tex. 1993). A summary judgment must be
affirmed if any of the theories advanced by the movant is meritorious. Harwell v.
State Farm Mut. Auto. Ins. Co., 896 S.W.2d 170, 173 (Tex. 1995).

Appraisal Award/Process

 The purpose of an appraisal clause is to provide a binding, extra-judicial
"remedy for any disagreement regarding the amount of the loss." Breshears v. State
Farm Lloyds, 155 S.W.3d 340, 344 (Tex. App.--Corpus Christi 2004, pet. denied). 
Appraisal awards made under the provisions of an insurance contract are binding and
enforceable, and a court will indulge every reasonable presumption to sustain an
appraisal award. See In re Allstate Cty Mut. Ins. Co., 85 S.W.3d 193, 195 (Tex. 2002);
Franco v. Slavonic Mut. Fire Ins., 154 S.W.3d 777, 786 (Tex. App.--Houston [14th
Dist.] 2004, no pet.). The effect of an appraisal provision is to estop one party from
contesting the value of damages in a suit on the insurance contract, leaving only the
question of liability for the court. Breshears, 155 S.W.3d at 343. The contract
between the parties specifies that an appraisal process will be the remedy for any
disagreement regarding the amount of loss and that the decision reached by the umpire
will set the amount of loss and such an award will be binding. 

 The Amines and Liberty participated in the appraisal process, and it is
undisputed that Liberty fully paid the amount set by the umpire. 

Article 21.55

 The purpose of former article 21.55 is to obtain prompt payment of claims
pursuant to policies of insurance, and its provisions are to be liberally construed to
promote this purpose. See Tex. Ins. Code Ann. art. 21.55, § 8 (Vernon Supp. 2006). 
Article 21.55 provides that, "if an insurer delays payment of a claim following its
receipt of all items, statements, and forms reasonably requested and required . . . for
more than 60 days, the insurer shall pay damages and other items as provided for in
Section 6 of this article." Tex. Ins. Code Ann. art. 21.55, § 3(f). Section six provides
for 18 percent annual interest on the amount of the delayed payment, together with
reasonable attorneys' fees. Id. § 6. If an insurer chooses to delay payment or not pay
a claim, it runs the risk of incurring this 18 percent statutory fee and reasonable
attorneys' fees. Breshears, 155 S.W.3d at 345; Oram v. State Farm Lloyds, 977
S.W.2d 163, 167 (Tex. App.--Austin, 1998, no pet.) 
 In its motion for summary judgment, Liberty asserted that it was entitled to
summary judgment on the Amines' article 21.55 claim "because Liberty's full payment
of the appraisal award precludes an award of article 21.55 penalties as a matter of
law." The Amines contend, however, that there is nothing in former 21.55 "which
mentions, refers to, depends upon or is any way triggered by whether or not any of the
parties are in breach of the contract. Late is late." They argue that, where a party
invokes the appraisal clause of the insurance policy and the insurance company makes
payment pursuant to the appraisal award, that payment violates article 21.55, if not
made in accordance with the time lines set out in the statute. We disagree.

 To prevail under Article 21.55, the insured must establish: (1) a claim under an
insurance policy; (2) that the insurer is liable for the claim, and, (3) the insurer has not
followed one or more sections of Article 21.55 with respect to the claim. Allstate Inc.
Co. v. Bonner, 51 S.W.3d 289, 219 (Tex. 2001); Wellisch v. United Servs. Auto.
Ass'n., 75 S.W.3d 53, 57 n.2 (Tex. App.--San Antonio 2002, pet. denied). The first
element was satisfied when the Amines filed their claim. The Amines argue that the
second element is "met through [Liberty's] partial payment of the claim and full
payment of the umpire's award, and the third should have been resolved through
presentation of evidence." 

 Texas courts that have considered the issue have concluded that full and timely
payment of an appraisal award under the policy precludes an award of Article 21.55
penalties as a matter of law. See Breshears, 155 S.W.3d at 344 (holding that insurer
did not breach contract and insureds were not entitled to payment of penalty fees, even
though final payment was delayed until completion of appraisal process ); Waterhill
Cos. Ltd. v. Great American Assurance Co., No. 05-4080 CV, 2006 WL 696577 at *2
(S.D. Tex. March 16, 2006) (holding that, when the appraisal clause is invoked, a
delay in payment pursuant to the appraisal process does not constitute an Article 21.55
violation). 

 The Amines assert; however, that, under the rationale of Higginbotham v. State
Farm, 103 F.3d 456 (5th Cir. 1997), Oram v. State Farm Lloyds, 977 S.W.2d 163
(Tex. App.--Austin 1998, no pet.), and Cater v. United Serv's Auto. Ass'n, 27 S.W.3d
81 (Tex. App.--San Antonio 2000, pet. denied), any time an insurer fails to pay a
claim after the requisite time frame, there will be a finding of Article 21.55 damages. 
These three cases are distinguishable for two reasons--there was no appraisal award
and the insurer was found liable on the claim. In Higginbotham, the court stated that,

 A wrongful rejection of a claim may be considered a delay in payment for
purposes of the 60-day rule and statutory damages. More specifically, if
an insurer fails to pay a claim, it runs the risk of incurring this 18 percent
statutory fee and reasonable attorneys' fees. In sum, State Farm took a
risk when it chose to reject Higginbotham's claim.


Higginbotham, 103 F.3d at 461. However, the court points out that State Farm's
Article 21.55 damages were because "State Farm lost when it was found liable for
breach of contract." Id. Insurance agencies are required to pay Article 21.55 damages
only after having first been found liable for the claim. See Cater, 27 S.W.3d at 84;
Oram, 977 S.W.2d at 167.

 There is no record evidence of a finding of liability on the part of Liberty. 
Liberty submitted to and timely paid the umpire's award, consistent with the appraisal
clause in the contract between the parties. The effect of an appraisal provision is to
estop one party from contesting the issue of damages in a suit on the insurance
contract, leaving only the question of liability for the court. Franco, 154 S.W.3d at
786. The issue here is whether an insurer's payment of an umpire's appraisal
judgment is indeed a finding of liability. "The sole basis for finding liability under
Article 21.55 is that the requisite time has passed and the insurer was ultimately found
liable for the claim." Performance Autoplex II Ltd. v. Performance Ford LP, 322 F.3d
847, 861 (5th Cir. 2003); see also Harris v. Am. Prot. Ins. Co., 158 S.W.3d 614, 623
(Tex. App.--Fort Worth 2005, no pet.) (insurer will not be held liable for violating
Article 21.55 unless it is held liable for the underlying insurance claim). Appraisal
does not resolve coverage issues. See Wells v. Am. Preferred Ins. Co., 919 S.W.2d
679, 683 (Tex. App.--Dallas 1996, writ denied). Liberty chose to pay the amount of
the appraisal award rather than to continue to contest the claim. Liberty's payment of
the appraisal award does not constitute a finding of liability as required by Article
21.55. Furthermore, a delay in payment pursuant to the appraisal process does not
implicate Article 21.55. Breshears, 155 S.W.3d at 345. Therefore, because the
Amines did not meet all three elements of the Allstate test, they are precluded from
receiving an Article 21.55 award. In Breshears, the court points out that the fact that
the appraisal process was later invoked does not alter the fact that State Farm complied
with the Insurance Code and provided a reasonable payment within a reasonable time. 
See Breshears, 155 S.W.3d at 345. 

 Liberty was in the process of evaluating the claims and offering payments. The
Amines decided to invoke the appraisal process. There is no evidence that Liberty
violated Article 21.55 before the Amines invoked the appraisal process. Liberty met
its burden of establishing that no genuine issue of material fact exists as to at least one
element of the Amines' claim; thus Liberty is entitled to judgment as a matter of law. 
See Tex. R. Civ. P. 166a(c); Cate, 790 S.W.2d at 562. The trial court did not err in
granting summary judgment. 

Conclusion


 We affirm the judgment of the trial court.


 George C. Hanks, Jr.

 Justice


Panel consists of Justices Alcala, Hanks, and Price. (6)








 
1. See Act of May 27, 1991, 72nd Leg., R.S., ch 242, § 11.03, art. 21.55, 1991 Tex. Gen.
Laws 939, 1043-45 (repealed and recodified 2003) (current version at Tex. Ins. Code
Ann. § 542.055 (Vernon Supp. 2006). The recodification did not substantively
change the statute. Because the petition in this case was filed while former article
21.55 was in effect, we use the former article throughout this Opinion.
2. The Amines had previously reported the roof claim, which was accepted and paid by
Liberty.
3. The limits of insurance under the Policy were $175,500 for the dwelling and $105,300
for personal property.
4. The umpire's award also included an appraisal for the roof leak, which Liberty
claimed was "not a part of the agreed scope of appraisal" and had been "satisfactorily
settled and closed." In his deposition, Amine testified that he had been fully reimbursed
for the damage caused to his roof. This additional appraisal is not part of the appeal.
5. In their response to Liberty's motion for summary judgment, the Amines conceded
that they could "not 'stack' their claims," and they were "not pursuing claims under
section 21.21 of the Insurance Code." 
6. The Honorable Frank C. Price, former Justice, Court of Appeals, First District of
Texas at Houston, sitting by assignment.