IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

February 28, 2008

Charles R. Fulbruge III
Clerk

No. 06-40121

JOSE LUIS SALINAS; MARTHA SALINAS

Plaintiffs - Appellants

v.

STATE FARM LLOYDS

Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas, McAllen
No. 7:02-CV-70

Before KING, BARKSDALE, and DENNIS, Circuit Judges.

PER CURIAM:[*]

In this Texas homeowners' insurance case, plaintiffs-appellants Jose Luis Salinas and Martha Salinas appeal the district court's judgment, rendered in accordance with the jury's verdict, in favor of defendant-appellee State Farm Lloyds. For the following reasons, we AFFIRM.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Jose Luis and Martha Salinas ("Appellants") have the Texas Standardized Homeowners Insurance Policy—Form B ("Form B") issued by State Farm Lloyds

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

("State Farm"). On July 31, 2001, Appellants filed a claim for insurance benefits under Form B informing State Farm that their home had been "discovered to have sustained significant damage from covered perils." The claim letter detailed five areas of concern: (1) an air conditioning leak or overflow; (2) a leak under the hall bath lavatory; (3) a leak under the master bath lavatory; (4) a kitchen sink leak; and (5) roof leaks. State Farm opened five claims and assigned the case to a representative for investigation.

In January 2002, Appellants vacated their home and moved into an apartment. Meanwhile, State Farm hired Video Plumbing, Inc. to test the plumbing system in the home. Video Plumbing identified a single leak in the hall bathroom tub. No other leaks were discovered. State Farm also hired HDR Engineering ("HDR") to test the air quality in the home. HDR concluded in its report that the overall indoor air quality was better than the outdoor air quality, but that fungal growth was present. Based on these two tests, on April 22, 2002, State Farm sent a reservation of rights letter to Appellants informing them that there were questions regarding their claims. The letter specifically referred Appellants to the mold exclusion and "Duties After Loss" provisions of Form B. State Farm then hired Texas Remediation Services ("TRS") to prepare a remediation estimate. Based on its review of HDR's report and its own inspection, TRS submitted an estimate of $10,833.22 to repair the damage and clean the contents of the home.

On May 16, 2002, State Farm informed Appellants that it was denying their claims for the roof, master bath, and kitchen sink leaks. With respect to the hall bath leak, according to State Farm, the repair estimate fell below Appellants' deductible. State Farm accepted the claim for the air conditioning, or HVAC, leak and determined that it owed Appellants $10,154.25, which State Farm paid on August 9, 2002. State Farm also extended Additional Living

Expenses ("ALE") to Appellants through October 12, 2002, in the amount of $16,355.01, to aid them in their relocation while the house was remediated.

On January 28, 2002, Appellants filed suit in state court alleging breach of contract, breach of the duty of good faith and fair dealing, and three extra-contractual claims brought under: (1) then-Article 21.21 of the Texas Insurance Code, re-codified as §§ 541.051 through 541.056 of the Texas Insurance Code; (2) then-Article 21.55 of the Texas Insurance Code, known as the Texas Prompt Payment of Claims Act ("TPPCA") and re-codified as §§ 542.051 through 542.061 of the Texas Insurance Code; and (3) the Texas Deceptive Trade Practices Act. Subsequently, the suit was removed to federal court.

On June 4, 2002, Appellants informed State Farm that they wanted to open an additional claim for a hose bib leak first discovered in January 2002, when a separate company that Appellants hired, P.E. Services, inspected their home to determine the scope of the damages. State Farm denied the claim on the ground that Appellants failed to timely report it.

After conducting extensive discovery, Appellants filed motions to enforce appraisal and to abate on October 21, 2002. The motion to enforce appraisal sought an order to enforce the appraisal clause in Form B and to compel State Farm to participate in the appraisal process. On November 12, 2002, State Farm filed a response arguing that appraisal was not available under the circumstances of the case, and that Appellants had waived their right to insist on appraisal given their substantial participation in the underlying litigation. The district court denied both motions in a brief order dated December 31, 2002.

On September 8, 2003, State Farm filed its motion for summary judgment, arguing that Form B's exclusions barred Appellants' claims. On October 29, 2003, the district court granted the motion with respect to all mold damage to the dwelling based on Form B's mold exclusion. The district court denied the motion with respect to all water damage and all mold damage to personal

property. Finally, the district court dismissed three of the extra-contractual claims regarding statutory and common law bad faith, but did not address the claim brought under TPPCA.

After being reassigned to a different district court judge, trial commenced on September 12, 2005. Based on the first judge's summary judgment ruling, the district court excluded evidence of mold damage. At trial, Peter de la Mora of P.E. Services testified on behalf of Appellants and opined that remediation and restoration of the water damage would cost approximately $12,812.26. However, a portion of that estimate appears to have been based on mold damage to the dwelling, which had already been held to be excluded under Form B, prompting objections from State Farm. Appellants also testified about the damage to their home. State Farm representative Jonas Saenz testified that the home was devoid of any remaining damage, and that, even accepting de la Mora's testimony as true, the approximate cost to remediate the home would be only $2,529.27. Saenz also testified about State Farm's claims-handling process. State Farm representative Vanessa Hicks testified about State Farm's payment of ALE and the basis for the denial of the subsequent hose bib leak claim as untimely. TRS representative Robert Garza testified about his estimate of the cost to remediate the home, specifically noting the lack of any visible water damage.

Before the end of the trial, Appellants moved for judgment as a matter of law with respect to: (1) all mold damage to the dwelling, even though the first district judge had already granted summary judgment in favor of State Farm on this issue; and (2) the TPPCA claim. Both motions were denied. The jury found for State Farm on September 14, 2005, and the district court entered judgment in State Farm's favor the next day. Appellants filed a motion for new trial challenging the jury's verdict on September 23, 2005, which the district court denied. Appellants filed their timely notice of appeal on October 4, 2005.

## II. DISCUSSION

A.     Whether the District Court Erred in Granting Partial Summary Judgment

Appellants' challenge to the district court's grant of summary judgment, arguing that Form B, by virtue of its "exclusion repeal provision," does not exclude mold damage to the dwelling caused by a plumbing leak, is foreclosed by our recent opinion in Carrizales v. State Farm Lloyds, No. 06-40286, 2008 WL 467097 (5th Cir. Feb. 22, 2008). In that case, we rejected the same argument with respect to an identical homeowners' policy, concluding that because the interaction between Form B's mold exclusion and exclusion repeal provisions creates no ambiguity, mold damage to the dwelling is not covered. Id. As the concurrence in Carrizales succinctly explained:

> The plaintiffs' argument for the exclusion repeal provision to reinstate coverage for [the mold exclusion in] 1.f with respect to the dwelling in Coverage A ignores the structure of the policy. Coverage B insures against risks to personal property from specific perils, one of which is plumbing leaks. The exclusion repeal provision expressly negates [the mold exclusion in] 1.f with respect to "loss caused by this peril." The "peril" referred to is plumbing leaks which affect the personal property of the insured. . . . there is no reason apparent in the policy to apply the exclusion repeal provision to the dwelling in Coverage A.

Id. (Reavley, J. concurring) (emphasis added). The majority in Carrizales further relied on Fiess v. State Farm Lloyds, 202 S.W.3d 744, 747 (Tex. 2006), to support its "Erie guess" as to how the state supreme court would decide the issue, specifically reasoning that if the exclusion repeal provision were expanded, as appellants in Fiess sought the ensuing loss provision to be expanded, the mold exclusion would be nugatory. Id. Accordingly, we affirm the summary judgment.

Furthermore, the district court's rulings based on this prior summary judgment—to include a jury charge instructing that mold was not covered and to exclude evidence of mold growth in the dwelling—were appropriate.

B.      Whether the District Court Erred in Denying Appraisal and Abatement

Appellants argue that they properly made a demand for appraisal under Form B's appraisal provision[1] after State Farm accepted partial coverage and made partial payments, and therefore, the district court erred in denying their motions for appraisal and abatement.  See Lundstrom v. United Servs. Auto. Ass'n - CIC, 192 S.W.3d 78, 87 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) ("The effect of an appraisal provision is to estop one party from contesting the issue of damages in a suit on the insurance contract, leaving only the question of liability for the court."); Vanguard Underwriters Ins. Co. v. Smith, 999 S.W.2d 448, 451 (Tex. App.—Amarillo 1999, no pet.) (providing that while an appraisal is pending, abatement is required under Texas law).

To the extent that the district court denied Appellants' motion to enforce appraisal on the ground that appraisal was inappropriate as a matter of Texas law, we review such determinations de novo.  See Chauvin v. State Farm Fire & Cas. Co., 495 F.3d 232, 237 (5th Cir. 2007) ("We . . . review a district court's

---

[1] The relevant portion of the appraisal provision is as follows:

> If you and we fail to agree on the actual cash value, amount of loss, or cost of repair or replacement, either can make a written demand for appraisal.  Each will then select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand.  The two appraisers will choose an umpire.  If they cannot agree upon an umpire within 15 days, you or we may request that the choice be made by a judge of a district court of a judicial district where the loss occurred.  The two appraisers will then set the amount of loss, stating separately the actual cash value and loss to each item.

(Emphasis added.)

determination of state law de novo."). We review the denial of a motion to abate for an abuse of discretion. FDIC v. Blanton, 918 F.2d 524, 533 (5th Cir. 1990) (citing Cont'l Cas. Co. v. McAllen Indep. Sch. Dist., 850 F.2d 1044, 1047 (5th Cir. 1988)).

Under Texas law, we conclude that the district court properly denied appraisal in this case. In Wells v. American States Preferred Insurance Co., 919 S.W.2d 679, 681 (Tex. App.—Dallas 1996, writ denied), the parties disputed whether the damage at issue was caused by a plumbing leak or foundation movement. The Texas appellate court interpreted the appraisal provision of a standard homeowner's insurance policy—the same appraisal provision at issue here—and held that the appraisal panel was limited to determining the amount of loss, not questions concerning cause and/or liability, specifically stating that it "is certainly not their function to resolve questions of coverage and interpret provisions of the policy." Id. at 685. The Wells court consequently concluded that the appraisal provision, as a matter of law, did not authorize the appraisers to determine whether the plumbing leak caused the loss to the homeowner's property. Id. at 685–86; see also Lundstrom, 192 S.W.3d at 89 ("[A]ppraisers exceed their authority when they engage in making the legal determination of what is or is not a covered loss based on their determination of what caused the loss or a portion of it.").

Here, after State Farm paid the initial claim, it consistently maintained throughout this litigation that the remaining claims were not covered under Form B, that Form B did not cover mold damage, and that any remaining water damage was caused by wear and tear and not from plumbing leaks. In addition, in their motion to enforce appraisal, Appellants made no attempt to confine the appraisal so as to avoid implicating coverage issues. Thus, under Wells, Appellants were not entitled to appraisal given that coverage and causation

issues still existed, and the district court did not err in failing to enforce the appraisal provision nor in declining to abate the proceedings.

C.    Whether the Jury's Verdict on Prompt Notice is Against the Weight of the Evidence

Appellants argue that the jury's verdict with respect to State Farm's prompt notice affirmative defense is against the weight of the evidence. Because Appellants failed to move for judgment as a matter of law on this issue, it is not reviewable on appeal. Coughlin v. Capitol Cement Co., 571 F.2d 290, 297 (5th Cir. 1978). Although Appellants raised this issue in their motion for a new trial, that action does not reopen the issue. Id. Instead, the court's review is limited to "whether the trial court abused its discretion in overruling the motion for a new trial." Id. at 298 (quoting Little v. Bankers Life & Cas. Co., 426 F.2d 509, 511 (5th Cir. 1970)). The relevant inquiry is not whether there is sufficient evidence, but whether there is an "absolute absence of evidence to support the jury's verdict." Id. (quoting Fugitt v. Jones, 549 F.2d 1001, 1004 (5th Cir. 1977)); see also Duff v. Werner Enters., Inc., 489 F.3d 727, 729 (5th Cir. 2007) (quoting Hidden Oaks Ltd. v. City of Austin, 138 F.3d 1036, 1049 (5th Cir. 1998)).

Form B requires that the insured give prompt notice of any claim. Thus, in its answer, State Farm raised the affirmative defense of failure to give prompt notice as a condition precedent to liability under the contract. To prevail on this defense, the insurer must establish: (1) failure by the insured to give prompt notice and (2) prejudice to the insurer caused by the delay. Coastal Ref. & Mktg. v. U.S. Fid. & Guar. Co., 218 S.W.3d 279, 286–87 (Tex. App.—Houston [14th Dist.] 2007, pet. filed). Here, the jury concluded, by special interrogatory, that although Appellants failed to give prompt notice, State Farm did not establish prejudice. In short, the jury ultimately rejected State Farm's affirmative defense. Thus, Appellants are not entitled to any relief as they essentially prevailed on this issue below.

D.     Whether the Jury's Verdict on the Breach of Contract Claims is Against the Weight of the Evidence

Appellants argue that the jury's verdict finding that State Farm did not breach Form B is against the weight of the evidence. Because Appellants failed to move for judgment as a matter of law on this issue, it is not reviewable on appeal. Coughlin, 571 F.2d at 297. Although Appellants raised this issue in their motion for a new trial, that action does not reopen the issue. Id. Instead, the court's review is limited to "whether the trial court abused its discretion in overruling the motion for a new trial." Id. at 298. The relevant inquiry is not whether there is sufficient evidence, but whether there is an "absolute absence of evidence to support the jury's verdict." Id.

The jury answered "no" to all subparts of the breach of contract interrogatory, thereby refusing to find that State Farm breached its insurance contract with Appellants. The subparts questioned whether State Farm breached the contract by: (1) failing to adequately investigate the losses claimed; (2) failing to pay the cost of repair or replacement of the dwelling; or (3) failing to pay the cost of repair or replacement of personal property. The record contains ample evidence upon which the jury could have based its answers. First, State Farm representative Hicks testified as to the basis for denying the hose bib leak claim as untimely. Second, State Farm representative Saenz testified as to State Farm's prompt investigation of the remaining claims, the payment of ALE, and the various reasons why the remaining claims were denied, including that: (1) the bathroom leak claim was below the deductible; (2) the remaining water damage was caused by wear and tear; (3) there was no leak found under the kitchen sink; (4) there was no roof leak; and (5) State Farm had already sufficiently covered any losses by paying Appellants $10,154.25 to remediate their home. Finally, State Farm representative Garza testified that

he did not see any real visible water damage. Thus, there is not an absolute absence of evidence to support the jury's verdict on the breach of contract claims.

E.      Whether the District Court Erred by Failing to Instruct the Jury on TPPCA

Appellants objected to the district court's instructions on the ground that they omitted any discussion of TPPCA and, at the same time, tendered their requested special question on the issue. The district court overruled the objection, without explanation, stating that "the objections made by the Plaintiffs and by the Defendants jointly and severally are overruled at this time." On appeal, Appellants argue that Saenz's testimony at trial provided undisputed evidence that State Farm violated TPPCA's acknowledgment requirements. Therefore, they assert, the district court erred in disallowing the proposed special question or, alternatively, in failing to instruct the jury on this issue.[2]

We review jury instructions and special interrogatories for abuse of discretion. EEOC v. Manville Sales Corp., 27 F.3d 1089, 1096 (5th Cir. 1994). The district court must "instruct the jurors, fully and correctly, on the applicable law of the case, and . . . guide, direct, and assist them toward an intelligent understanding of the legal and factual issues involved in their search for truth." Bender v. Brumley, 1 F.3d 271, 276 (5th Cir. 1993) (quoting 9 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2556

---

[2] Although Appellants raised other TPPCA claims at trial, the only TPPCA claim presented on appeal is whether State Farm complied with the acknowledgment requirements. See TEX. INS. CODE ANN. art. 21.55 § 2(a) (current version at TEX. INS. CODE ANN. § 542.055(a)) ("[A]n insurer shall, not later than the 15th day after receipt of notice of a claim . . . (1) acknowledge receipt of the claim; (2) commence any investigation of the claim; and (3) request from the claimant all items, statements, and forms that the insurer reasonably believes, at the time, will be required from the claimant."); TEX. INS. CODE. ANN. art. 21.55 § 6 (current version at TEX. INS. CODE ANN. § 542.060) ("In all cases where a claim is made pursuant to a policy of insurance and the insurer liable therefor is not in compliance with the requirements of this article, such insurer shall be liable to pay the holder of the policy . . . in addition to the amount of the claim, 18 percent per annum of the amount of such claim as damages, together with reasonable attorney fees.").

(1971)). Thus, for reversal, "the challenger must demonstrate that the charge as a whole creates substantial and ineradicable doubt whether the jury has been properly guided in its deliberations." Johnson v. Sawyer, 120 F.3d 1307, 1315 (5th Cir. 1997) (citation and internal quotations omitted). Even "if the jury instructions were erroneous, we will not reverse if we determine, based upon the entire record, that the challenged instruction could not have affected the outcome of the case." Id. Additionally, "to the extent there is claimed error in refusing to give an instruction, the challenger must show as a threshold matter that his proposed instruction correctly states the law." Id. (citation and internal quotations omitted).

With respect to the Appellants' proposed special question, the district court did not err in refusing to submit it because it misstated the law. In order for liability to attach under TPPCA, a party must establish: "(1) a claim under an insurance policy; (2) that the insurer is liable for the claim; and (3) that the insurer has failed to follow one or more sections of article 21.55 with respect to the claim." Allstate Ins. Co. v. Bonner, 51 S.W.3d 289, 291 (Tex. 2001) (emphasis added); see also TEX. INS. CODE § 542.060(a); Harris v. Am. Prot. Ins. Co., 158 S.W.3d 614, 621 (Tex. App.—Fort Worth 2005, no pet.) ("To recover the statutory penalties available under article 21.55, an insured must first prove that the insurer is liable for the underlying claim."). Because the Appellants' proposed special question omitted any mention that the insurer must be liable for the

11

underlying insurance claim,[3] it misstated the law, and the district court did not abuse its discretion in refusing to submit it.

However, this does not conclude our inquiry. Appellants alternatively argue that the district court's failure to include any instruction on the TPPCA claim was an abuse of discretion. See Dahlgren v. United States, 553 F.2d 434, 440 (5th Cir. 1977) ("If the request directs the court's attention to a point upon which an instruction to the jury would be helpful, the court's error in failing to charge may not be excused by technical defects in the request."); Katch v. Speidel, Div. of Textron Inc., 746 F.2d 1136, 1139 (6th Cir. 1984) ("Even if an incorrect proposed instruction is submitted which raises an important issue of law involved in light of proof adduced in the case, it becomes the duty of the trial court to frame a proper instruction on the issue raised . . . .") (citing Celanese Corp. of Am. v. Vandalia Warehouse Corp., 424 F.2d 1176, 1181 (7th Cir. 1970); Messer v. L.B. Foster Co., 254 F.2d 412, 414 (5th Cir. 1958); Westchester Fire Ins. Co. v. Hanley, 284 F.2d 409, 418 (6th Cir. 1960)).

Here, Appellants alleged a TPPCA claim in their complaint, presented evidence on that claim at trial, and were entitled to have that claim submitted to the jury. See Bowers v. Firestone Tire & Rubber Co., 800 F.2d 474, 478 (5th

---

[3] Appellants' proposed TPPCA special question follows:

Did Defendant violate the Texas Prompt Payment of Claims Act?
A violation of the Texas Prompt Payment of Claims Act occurs if:

1)   A written claim is not acknowledged within fifteen days of receipt;

2)   An investigation of a written claim is not begun within fifteen days of receipt of the written claim; or

3)   Payment is not made within 60 days of receipt of the written claim without being excused. Non-payment is excused if a letter is sent giving reasons that the insurance carrier cannot make payment within the time frame of the statute, and such letter is sent within 45 days of the receipt of a written claim.

Cir. 1986) ("[T]he judge must submit all material issues raised by the pleadings and evidence."). However, any error in refusing to instruct the jury on the TPPCA claim was harmless. As previously stated, for liability to attach under TPPCA, the insurer must be liable for the underlying insurance claim. See Bonner, 51 S.W.3d at 291. Thus, with respect to the claims for mold damage to Appellants' dwelling and the claims for which the jury found that State Farm was not liable, the inclusion of the TPPCA instruction would not have affected the outcome of the case.[4]

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's judgment.

---

[4] Furthermore, assuming arguendo that State Farm conceded that Form B covered at least some of the damage to Appellants' home when it made payments to Appellants for the air conditioning leak and ALE (although it apparently made those payments under a reservation of rights), the error was still harmless. Form B includes as one of its "Conditions" that State Farm adhere to the same acknowledgment requirements listed in TPPCA—that within fifteen days of receiving notice of the insured's claim, State Farm must acknowledge receipt of the claim, begin an investigation of the claim, and request information from the insured that is required for the claim. Because Appellants argued to the jury that State Farm breached its contract by violating these acknowledgment "Conditions" and thereafter, the jury determined no breach with respect to the adequacy of State Farm's investigation, the outcome of the case would not have been different if the TPPCA charge were included.