

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-19-00152-CV

_____

JERLENE TIPPETT, Appellant

V.

SAFECO INSURANCE COMPANY OF INDIANA, Appellee

On Appeal from the 67th District Court
Tarrant County, Texas
Trial Court No. 067-294418-17

Before Sudderth, C.J.; Bassel and Wallach, JJ.
Memorandum Opinion by Justice Bassel

# MEMORANDUM OPINION

This appeal concerns the effect, if any, of an umpire's note that made findings applying an insurance policy's cosmetic-damage exclusion in connection with an appraisal on the amount an insurer must pay to estop an insured's contract claim. Appellee Safeco Insurance Company of Indiana moved for a traditional summary judgment claiming that its post-appraisal award payment negated the breach and injury elements to Appellant Jerlene Tippett's contract claim and, consequently, disposed of her remaining claims as a matter of law. Safeco contended that it had paid the amount owed under the appraisal award, despite not paying the full amount of the loss determined by the panel, because it applied the umpire's findings to establish the applicability of a cosmetic-damage exclusion, thus reducing the amount owed.

In her first issue, Tippett appeals the trial court's order granting summary judgment dismissing all of her claims and denying Tippett's cross-motion for partial summary judgment on her prompt-payment claim. We conclude that neither party met its summary-judgment burden. Safeco failed to meet its burden to prove the applicability of the exclusion because (1) it did not conclusively establish that two members of the panel adopted the umpire's findings and (2) the umpire's findings constituted a liability determination, which the panel had no authority to make. Tippett failed to establish that Safeco was liable for a claim under the policy and that Safeco violated the prompt-payment provisions of the Insurance Code as a matter of

law. Neither Safeco's invoking the appraisal process nor the appraisal award established such liability as a matter of law, as she contended in the trial court.

In her second issue, Tippett argues that the trial court erred by granting Safeco's no-evidence motion for summary judgment because she presented more than a scintilla of evidence to support the challenged elements of the claims at issue. Because we conclude that Safeco's no-evidence motion was contingent upon it establishing that it had paid the full amount of the appraisal award as a matter of law, we do not reach this question because our resolution of Tippett's first issue is dispositive.

Accordingly, we affirm the trial court's denial of Tippett's motion for partial summary judgment but reverse the trial court's grant of summary judgment on all of Tippett's claims.

## BACKGROUND

Tippett submitted a claim under her homeowner's-insurance policy with Safeco for hail damage to her home from a March 17, 2016 storm. The policy contains an exclusion for "Cosmetic Damage to Metal Roofing" that excludes "cosmetic loss or damage, meaning any loss that is limited to the physical appearance of a metal roof surface" from the property losses that the policy covers. Safeco's adjuster inspected Tippett's home and shed and prepared an estimate that totaled $4,268.14 (replacement cost value) (RCV) and $3,401.01 (actual cash value) (ACV). Safeco sent Tippett a letter stating that "it is unable to pay for a portion of [her] claim because [her] policy

3

does not provide coverage for part of the loss." Specifically, it "found scuffs and dents that are cosmetic from hail and do not affect the function or expected life cycle of the metal roof system. The only functional damage found on the metal roof was on the front slope where limbs hit [the] roof." Because the covered loss was less than the policy's $3,453.00 deductible, Safeco paid Tippett nothing.

Over a year later, Tippett hired a public adjuster who inspected the property and prepared an estimate totaling $76,937.48 (ACV). Upon receiving notice of representation from Tippett's public adjuster, Safeco retained an engineering company to re-inspect the property. Based on its engineer's report, Safeco prepared a revised estimate totaling $7,070.96 (RCV) and $5,752.28 (ACV). Safeco sent Tippett a letter advising her of its coverage position, again denying coverage for cosmetic damage to the metal roofs. After deducting for depreciation and the deductible, Safeco paid Tippett $2,299.28.

Tippett filed suit asserting claims against Safeco for breach of contract, unfair settlement practices in violation of Chapter 541 of the Insurance Code, violations of the Prompt Payment of Claims provisions of Chapter 542 of the Insurance Code (TPPCA), breach of the duty of good faith and fair dealing, violations of the Texas Deceptive Trade Practices Act (DTPA), and fraud.[1]

---

[1]Tippett also sued Safeco's insurance adjuster but nonsuited those claims shortly after filing suit.

Safeco subsequently invoked the policy's appraisal provision. Safeco and Tippett each picked an appraiser, and then their appraisers picked an umpire.

Safeco's appraiser and the umpire signed an "Agreement Award" (the Appraisal Award) and determined that the amount of loss was $59,794.89 (RCV) and $56,612.82 (ACV). Tippett's appraiser did not agree to the Award.

The summary-judgment record also reflects the existence of an umpire "Appraisal Estimate." The Appraisal Estimate described twenty-three different appraisal categories (e.g., "Remove Aluminum shake/slate-including felt-color finish," "R&R Window screen, 1 – 9 SF," and "Window labor minimum[]") and RCV and ACV calculations for each. Two sections of the Appraisal Estimate contained the identical "umpire's note," which stated,

> UMPIRE'S NOTE:
>
> IT IS MY OPINION THAT HAIL DID NOT DAMAGE THE ALUMIN[UM] SHAKE ROOF IN A MANNER THAT CAUSED OR CONTRIBUTED TO ANY INTERIOR LEAKING.
>
> THERE IS EVIDENCE OF HAIL DENTING ON THE ALUMINUM SHAKES ACROSS THE ROOF. MY OPINION IS THAT THIS HAIL DENTING WILL NOT CAUSE A LOSS OF THE INTENDED WATER-SHEDDING FUNCTIONALITY OF THE ALUMINUM SHAKES.

Following the appraisal, Safeco prepared a revised estimate totaling $8,693.74 (ACV). Safeco, relying upon the umpire's note, excluded losses relating to Tippett's dwelling and shed roofs from coverage and then, after subtracting the deductible and its prior payment, paid Tippett $2,941.46, reserving its rights, remedies, and defenses

5

at law and under the policy. Safeco noted that "[a]lthough the panel did not identify any functional damage to the metal roof shakes, . . . Safeco previously paid for repairs to the dwelling roof. Therefore, those repairs [were] included in Safeco's revised estimate."

Within a few months, Safeco filed a combined traditional and no-evidence motion for summary judgment, arguing that it had paid the full amount owed under the Appraisal Award and thus conclusively negated the breach and injury elements to Tippett's contract claim as a matter of law. Without a contract claim, Safeco reasoned that Tippett's extra-contractual claims failed as a matter of law absent a showing by Tippett of an independent injury; and it argued that Tippett could not show any independent injury. Safeco further requested a no-evidence summary judgment on all of Tippett's claims.

Shortly thereafter, Tippett filed a motion for partial summary judgment arguing that she had established her claim against Safeco under the TPPCA as a matter of law.

The trial court denied Tippett's motion, granted Safeco's motion, and dismissed the lawsuit with prejudice. Tippett now appeals both of the trial court's rulings.

## PRELIMINARY MATTER

As a preliminary matter, we must determine whether Safeco asserted, in substance, traditional and no-evidence grounds for summary judgment on each of Tippett's claims so that we may review the trial court's rulings under the proper

6

standard. No-evidence and traditional grounds for summary judgment may be combined in a single motion. *Binur v. Jacobo*, 135 S.W.3d 646, 650–51 (Tex. 2004). Because the trial court did not state the grounds for granting summary judgment, we will uphold the summary judgment if it can be sustained under either traditional or no-evidence grounds. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001). When a party moves for summary judgment under both traditional and no-evidence grounds, we normally first review the trial court's judgment under the no-evidence grounds. *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004). But we may address the traditional grounds for summary judgment first when they are dispositive. *See D.R. Horton-Tex., Ltd. v. Savannah Props. Assocs., L.P.*, 416 S.W.3d 217, 225 n.7 (Tex. App—Fort Worth 2013, no pet.) (addressing traditional summary judgment first because movant's affirmative defense was dispositive).

On appeal, Tippett argues that this court need not review the no-evidence motion first "because both motions ultimately turn" on the issue of whether the Appraisal Award estops her claims. We agree that we need not review the no-evidence motion first because Safeco made its no-evidence motion contingent upon it prevailing on its traditional grounds for summary judgment.

In Safeco's summary-judgment motion, it expressly argued, among other similar statements, that "Plaintiff has no evidence to support any of her causes of action *now that Safeco has timely paid all amounts owed under the appraisal award.*" [Emphasis added.] In its summary-judgment reply, Safeco again argued, "the *sole issue* for the

7

Court is one of law: whether the Appraisal Award . . . estops Plaintiff's breach of contract claim and her extra-contractual claims – *contingent*, *as they are*, on the contract claim absent a showing of an independent injury." [Emphases added.]

Safeco made its challenge that Tippett had no evidentiary support for specific elements to her claims contingent upon its contention that it had paid all amounts owed under the Appraisal Award as a matter of law. Safeco argued that its payment negated various elements to Tippett's claims, such as breach, damages, the wrongful denial of benefits, bad faith, and detrimental reliance.[2] On appeal, Safeco asserts no argument challenging whether Tippett met her burden, if any, to produce more than a scintilla of probative evidence to support any element of any claim that Safeco

---

[2]Tippett also argues on appeal that Safeco's no-evidence motion on the TPPCA claim was legally insufficient. Because Safeco's request for no-evidence summary judgment on the TPPCA claim was only a statement that Tippett had "no evidence to support one or more of the elements" of the claim, we agree. Rule 166a(i) does not authorize general no-evidence challenges or conclusory motions. Tex. R. Civ. P. 166a(i) & 1997 cmt.; *see also Cmty. Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 695 (Tex. 2017); *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009); *P.C. as next friend of C.C. v. E.C.*, No. 02-18-00389-CV, 2019 WL 4010222, at *4 (Tex. App.—Fort Worth Aug. 26, 2019, no pet.) (citing *Dyer v. Accredited Home Lenders, Inc.*, No. 02-11-00046-CV, 2012 WL 335858, at *3–5 (Tex. App.—Fort Worth Feb. 2, 2012, pet. denied) (mem. op.)). We conclude that Safeco failed to meet its initial burden to file a legally sufficient no-evidence motion with respect to Tippett's TPPCA claim. Safeco's traditional request for summary judgment on this claim was based solely on its contention that payment of the full amount of the Appraisal Award disposed of the TPPCA claim; we will discuss that argument below.

challenged in its no-evidence motion. Nor does it contend that we should review its no-evidence grounds for summary judgment first or even at all.[3]

We conclude that the substance of Safeco's no-evidence arguments was merely a rephrasing of its traditional motion for summary judgment; Safeco's no-evidence arguments were all contingent upon it establishing as a matter of law that it had paid all amounts owed under the Appraisal Award. *See Coleman v. Prospere*, 510 S.W.3d 516, 518–19 (Tex. App.—Dallas 2014, no pet.) (holding that the substance of a motion and not its form or the attachment of evidence determines whether it is a no-evidence, traditional, or combined motion) (citing *Binur*, 135 S.W.3d at 650–51). Accordingly, we will review Safeco's motion for summary judgment on Tippett's claims under only the traditional summary-judgment standard.

## THE TRIAL COURT ERRED BY GRANTING SAFECO'S MOTION FOR SUMMARY JUDGMENT BECAUSE SAFECO FAILED TO MEET ITS SUMMARY-JUDGMENT BURDEN TO CONCLUSIVELY NEGATE AN ELEMENT OF TIPPETT'S CLAIMS

### A.     Standard of review

We review a traditional summary judgment de novo. *Travelers Ins. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless

---

[3]Safeco's sole "responsive issue presented" was "[w]hether the trial court erred when it granted a take-nothing summary judgment, finding as a matter of law that Tippett has been paid all benefits to which she was entitled pursuant to the findings of the appraisal panel, and that she has not demonstrated an injury independent of her right to policy benefits."

reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008).

A defendant that conclusively negates at least one essential element of a plaintiff's cause of action is entitled to summary judgment on that claim. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010); *see* Tex. R. Civ. P. 166a(b), (c). Once the defendant produces sufficient evidence to establish the right to summary judgment, the burden shifts to the plaintiff to come forward with competent controverting evidence that raises a fact issue. *Van v. Peña*, 990 S.W.2d 751, 753 (Tex. 1999). If a movant does not meet its summary-judgment burden, the burden does not shift to the nonmovant, and the nonmovant does not need to respond or present any evidence. *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 511 (Tex. 2014). In a summary-judgment case, the issue on appeal is whether the movant met the summary-judgment burden by establishing that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Mann Frankfort*, 289 S.W.3d at 848.

**B.     The function of appraisal provisions in insurance policies is to appraise the insured's loss.**

Appraisal clauses are included in most property insurance policies. *Barbara Techs. Corp. v. State Farm Lloyds*, 589 S.W.3d 806, 814 (Tex. 2019). They provide a

10

mechanism to resolve disputes between insureds and insurers about the amount of loss for a covered claim. *Ortiz v. State Farm Lloyds*, 589 S.W.3d 127, 131 (Tex. 2019). The appraisal process can provide a less expensive, more efficient alternative to litigation. *See In re Universal Underwriters of Tex. Ins. Co.*, 345 S.W.3d 404, 407 (Tex. 2011) (orig. proceeding).

"[I]n every property damage claim, someone must determine the 'amount of loss,' as that is what the insurer must pay." *See Barbara Techs.*, 589 S.W.3d at 814. Appraisers determine the amount of damage resulting to the property submitted for their consideration. *Wells v. Am. States Preferred Ins. Co.*, 919 S.W.2d 679, 685 (Tex. App.—Dallas 1996, writ denied). The appraisal mechanism allows the parties to "contractually resolve" a dispute about "the amount of the covered loss." *Ortiz*, 89 S.W.3d at 132. The appraisal process binds the parties to the extent or amount of the loss, but "leav[es] the question of liability for such loss to be determined, if necessary, by the courts." *State Farm Lloyds v. Johnson*, 290 S.W.3d 886, 889 (Tex. 2009) (citing *Scottish Union & Nat'l Ins. Co. v. Clancy*, 8 S.W. 630, 631 (Tex. 1888)); *see also Ortiz*, 589 S.W.3d at 132 ("[A]n enforceable appraisal award . . . is binding on the parties with respect to that amount."). The "effect of an appraisal decision is to estop one party from contesting the issue of the value of damages in a suit on the insurance contract." *Allison v. Fire Ins. Exch.*, 98 S.W.3d 227, 253 (Tex. App.—Austin 2002, pet. granted, judgm't vacated w.r.m.); *see also Amine v. Liberty Lloyds of Tex. Ins. Co.*, No. 01-06-

00396-CV, 2007 WL 2264477, at *3 (Tex. App.—Houston [1st Dist.] Aug. 9, 2007, no pet.) (mem. op.).

Texas courts have long held that appraisal awards made pursuant to the provisions of an insurance contract are binding and enforceable in the absence of fraud, accident, or mistake. *See Johnson*, 290 S.W.3d at 888; *Barnes v. W. Alliance Ins. Co.*, 844 S.W.2d 264, 267 (Tex. App.—Fort Worth 1992, writ dism'd by agr.) ("An award entered by appraisers and an umpire can be disregarded in only two instances: (1) if the award was made without authority; or (2) if the award was made as the result of fraud, accident, or mistake.").

Generally, under Texas law, by making payment of the full amount of an appraisal award after the appraisal process has been invoked, an insurer complies with every requirement of the contract, and such payment bars an insured's breach of contract claim premised on the failure to pay the amount of the covered loss. *See Ortiz*, 589 S.W.3d at 129 (holding insurer's payment of full amount of appraisal award barred insured's contract claim that was premised on the fact that the appraisal award valued the covered loss in an amount greater than the insurer had initially assessed); *Nat'l Sec. Fire & Cas. Co. v. Hurst*, 523 S.W.3d 840, 845 (Tex. App.—Houston [14th Dist.] 2017) (stating that "[g]enerally, tender of the full amount owed pursuant to the conditions of an appraisal clause is all that is required to estop the insured from raising a breach of contract claim" and that an "insured's rejection of [the insurer's full and timely] payment [of the appraisal award] does not prevent estoppel"), *pet.*

12

*denied*, No. 17-0719, 2019 WL 6972241 (Tex. Dec. 20, 2019); *Anderson v. Am. Risk Ins. Co. Inc.*, No. 01-15-00257-CV, 2016 WL 3438243, at *4 (Tex. App.—Houston [1st Dist.] June 21, 2016, no pet.) (mem. op.) (holding that insurer fulfilled its obligations under the contract by its payment of appraisal award after accounting for the deductible, prior payments, and policy limits); *Franco v. Slavonic Mut. Fire Ins.*, 154 S.W.3d 777, 786–87 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (holding that appraisal award estopped insureds' contract claim against insurer when insurer paid the amount of appraisal award, less the deductible, and the insureds accepted the payment).

Although every reasonable presumption will typically be made in favor of an appraisal award, when reviewing a summary-judgment proceeding, that rule must yield to the degree its application conflicts with the presumptions required to be made in favor of a nonmovant. *Wells*, 919 S.W.2d at 683.

**C.    Safeco did not conclusively prove that it had paid the amount of the Appraisal Award. By reducing its payment, Safeco had the burden to establish the applicability of the cosmetic-damage exclusion as a matter of law; the umpire's note was not conclusive evidence of the exclusion's application.**

Safeco's request for summary judgment was premised on its contention that it had paid the full amount owed under the Appraisal Award and that this disposed of each of Tippett's claims as a matter of law.[4] But Safeco did not contend that it paid

---

[4]Specifically, Safeco argued that by paying the full amount owed under the Appraisal Award, it negated the breach and injury elements to Tippett's contract claim

13

the amount of loss determined by the appraisal panel. Rather, Safeco contends that it paid the full amount of the *covered* loss because it applied the cosmetic-damage exclusion to reduce the amount it claimed it owed under the Appraisal Award. Safeco relied upon the umpire's note as conclusively establishing the applicability of the cosmetic-damage exclusion.

In her first issue on appeal, Tippett challenges whether Safeco's payment barred her from recovering on her contractual and extra-contractual claims as a matter of law. According to Tippett, Safeco had the burden to establish the applicability of the exclusion. Safeco relied upon the umpire's note to exclude "cosmetic" damage from coverage, but the policy did not authorize the panel to determine issues other than the amount of loss, and appraisal awards do not establish liability. Estoppel applies only when an insurer pays the full amount of the award; but Safeco made only a partial payment. Thus, there is no evidence that Safeco paid the full Appraisal Award. We agree with Tippett on all of these points.

_____

as a matter of law. Safeco argued that because Tippett had no contract claim, Tippett had to show an independent injury in order to sustain her extra-contractual claims, which she could not do. It further sought summary judgment on Tippett's TPPCA claim, arguing that its timely payment of the Appraisal Award disposed of the claim. Likewise, it argued that its payment of the Appraisal Award disposed of Tippett's fraud claim because such payment negated detrimental reliance. We need not address whether Tippett was required to demonstrate an independent injury to maintain her extra-contractual claims or whether Safeco's post-Appraisal Award payment negated any element to Tippett's claims because our ruling on whether Safeco met its burden to prove that it paid the full amount owed under the Appraisal Award is dispositive. *See* Tex. R. App. P. 47.4.

14

**1.    As the insurer, Safeco bore the burden to establish why Tippett's claim was excluded from coverage.**

An insured has the burden of establishing coverage under the terms of the policy. *JAW The Pointe, L.L.C. v. Lexington Ins. Co.*, 460 S.W.3d 597, 603 (Tex. 2015). As Tippett points out, to avoid liability, the insurer then has the burden to plead and prove that the loss falls within an exclusion to the policy's coverage.[5]  *Id.*  If the insurer proves that an exclusion applies, then the burden shifts back to the insured to show that an exception to the exclusion brings the claim back within coverage.  *Id.* Safeco's summary-judgment motion did not challenge whether the policy provided coverage for the loss to Tippett's property generally.  Rather, its motion focused on the applicability of the cosmetic-damage exclusion.

The question presented is whether Safeco met its burden to prove the applicability of the cosmetic-damage exclusion based solely on the umpire's note. Tippett disputes whether the umpire's finding is even attributable to the panel and also argues that the policy did not authorize the panel to determine issues other than the amount of loss.  Safeco argues that appraisers may allocate damages between

---

[5]In her response to the summary-judgment motion, Tippett argued that if Safeco disputed the amount of the award, then the award necessitated a determination of liability to find the amount owed; that the policy did not define "cosmetic" damage; that there was a fact question as to whether the damages to her roofs were cosmetic; and that there was a fact question as to whether the umpire exceeded the scope of his authority by giving his opinion about the damages to the roof.  We conclude that her arguments in the trial court are sufficiently similar to her arguments on appeal to preserve them for our review. *See* Tex. R. App. P. 33.1.

covered and excluded perils and that Safeco's appraiser adopted the umpire's findings. The following explains why we agree with Tippett.

### 2. Why the umpire's note was not conclusive evidence to carry Safeco's burden.

For both evidentiary and legal reasons, we conclude that Safeco did not conclusively establish the applicability of the cosmetic-damage exclusion. Safeco did not conclusively establish that the appraisal panel adopted the findings in the umpire's note. Even if it did, the appraisal panel did not have authority to construe the policy and conclusively determine Safeco's liability under the policy.

### a. Safeco did not conclusively establish that the findings in the umpire's note were findings made by the appraisal panel.

The appraisal clause requires two of the three members of the appraisal panel to agree to the award in writing. It states, "An award in writing, so itemized, of any two of these three, when filed with the company shall determine the amount of loss." Because Safeco relied upon the findings in the umpire's note to establish the applicability of the cosmetic-damage exclusion to reduce the amount owed under the Appraisal Award, and assuming this was a finding the panel had authority to make, Safeco bore the initial burden to conclusively prove that the umpire and one other member of the panel adopted the umpire's findings in the Appraisal Estimate and incorporated them into the Appraisal Award. *See* Tex. R. Civ. P. 166a(c).

Safeco's appraiser and the umpire both signed the one-page Appraisal Award. But the Appraisal Award does not contain the umpire's note. Rather, the umpire's

16

note is in the separate umpire Appraisal Estimate, which is not signed. The Appraisal Award does not mention or incorporate by reference the Appraisal Estimate, and the amount of the award was for the full amount of the loss found by Safeco's appraiser and the umpire without any reduction that would result from application of the cosmetic-damage exclusion. Thus, Safeco's appraiser's signature on the Appraisal Award is not conclusive evidence that he adopted the findings in the umpire's note.

Safeco argues that its appraiser adopted the umpire's findings in an email that he sent to the umpire and Tippett's appraiser. Safeco's appraiser stated, "I am in agreement with the award, as long as the umpire breakdown is attached as an integral part of the award package. I have attached the award with my signature and await execution of the form." This email does not fill the gap in Safeco's summary-judgment evidence.[6]

---

[6]On appeal, Tippett argues that Safeco's appraiser's email is "a far cry from 'expressly stat[ing]' that the hail damage did not affect the roof's proper function. Contrary to Safeco's representation, two of the three appraisers did not expressly find that the damage would not affect the roof's function." We liberally construe this argument as a challenge to the legal sufficiency of Safeco's summary-judgment evidence, which may be raised for the first time on appeal. *See* Tex. R. App. P. 38.1(f), .9; *Old Am. Ins. Co. v. Lincoln Factoring, LLC*, 571 S.W.3d 271, 276 n.7 (Tex. App.—Fort Worth 2018, no pet.); *see also Speedy Stop Food Stores, Ltd. v. Reid Road Mun. Util. Dist.*, 282 S.W.3d 652, 655 (Tex. App.—Houston [14th Dist.] 2009) (liberally construing appellant's brief to include challenge to trial court's order striking summary-judgment affidavit even though the appellant did not expressly state this argument but instead argued the affidavit raised a genuine issue of material fact), *aff'd*, 337 S.W.3d 846 (Tex. 2011).

Safeco's appraiser does not mention the umpire's note in his email.[7]  At most, the evidence gives rise to an inference that the "breakdown" that Safeco's appraiser referenced was the Appraisal Estimate, that the Appraisal Estimate contained the umpire's note at that time, that Safeco's appraiser reviewed the umpire's note, that Safeco's appraiser agreed with the umpire's note, and that Safeco's appraiser intended his email to constitute his written incorporation of the findings in the umpire's note into the Appraisal Award.  This does not satisfy Safeco's summary-judgment burden.  A motion for summary judgment that depends on "a mere ground of inference" (or, as in here, many inferences) should not be granted.  *See Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S.W.2d 41, 47 (Tex. 1965); *see also State v. Durham*, 860 S.W.2d 63, 66 (Tex. 1993) (stating that summary judgment could not be based on inferences from the evidence urged by movants); *Nixon v. Mr. Prop. Mgmt. Co., Inc.*, 690 S.W.2d 546, 549 (Tex. 1985) ("Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor."); *Fieldtech Avionics & Instruments, Inc. v. Component Control.Com, Inc.*, 262 S.W.3d 813, 833 (Tex. App.—Fort Worth 2008, no pet.) ("Speculation is not evidence.") (citing *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 164 (Tex. 2004)).

In fact, we can draw reasonable inferences contrary to those drawn by Safeco from the appraiser's email.  *See Nixon*, 690 S.W.2d at 549.  First, although the

---

[7]Safeco's summary-judgment evidence also did not include the attachment to its appraiser's email.

18

Appraisal Estimate describes twenty-three different items and itemizes loss estimates relative to each, the Appraisal Award also contains the following breakdown:

| Coverage Type | Replacement Cost | Actual Cash Value |
|---|---|---|
| Dwelling: | $56,298.61 | $53,335.91 |
| Other Structure: | $3,496.28 | $3,276.91 |
| Contents: | $0.00 | $0.00 |
| Ordinance & Law: | $0.00 | $0.00 |
| Additional Living Expense: | $0.00 | $0.00 |
| Total Amount of Loss | $59,794.89 | $56,612.82 |

Thus, it is reasonable to draw an inference contrary to the one that Safeco advocates and to infer that the "breakdown" is the itemization included in the Appraisal Award and not some other breakdown that the appraiser did not endorse with his signature.

Second, directly below that breakdown, the panel disclaimed making any findings about coverage in the Appraisal Award, stating,

> Limitations – The above[-]referenced conclusions remain subject to applicable policy language and exclusions, as well as deductible obligations of the insured. . . . In no way are these findings opinions about coverage, or coverage terms, which may be determined or applied by others.

The Appraisal Estimate likewise includes the following chart entitled, "Coverage," for all property submitted for the panel's consideration:

| Coverage | Item Total | % | ACV Total | % |
|---|---|---|---|---|
| Dwelling | 56,298.61 | 94.15% | 53,335.91 | 94.21% |
| Other Structures | 3,496.28 | 5.85% | 3,276.91 | 5.79% |
| Contents | 0.00 | 0.00% | 0.00 | 0.00% |
| Ordinance & Law | 0.00 | 0.00% | 0.00 | 0.00% |
| - | 0.00 | 0.00% | 0.00 | 0.00% |
| Total | 59,794.89 | 100.00% | 56,612.82 | 100.00% |

19

By contrast, the umpire's note stated findings solely in terms of the umpire's personal opinion, not in terms of the panel's opinion ("It is *my* opinion that hail did not damage the alumin[um] shake roof in a manner that caused or contributed to any interior leaking," and "*My* opinion is that [the] hail denting will not cause a loss of the intended water-shedding functionality of the aluminum shakes." [Emphasis added.]). The panel did not reduce the amount of the loss determined by the panel in the Appraisal Award based on the findings in the umpire's note in any way. Even if the Appraisal Estimate was the "breakdown" that Safeco's appraiser referenced in his email, it is reasonable to infer that Safeco's appraiser assumed that the umpire's findings were superfluous and not attributable to the panel, that he did not adopt those findings, and that the findings were not part of the Appraisal Award that he signed.

The affidavit testimony submitted by Safeco did not close the loop and conclusively prove that Safeco's appraiser adopted the umpire's note. In the trial court, Safeco submitted the Affidavit of Michael Diksa, a Safeco attorney, who testified that he "received an email from Safeco's appraiser forwarding a copy of an Agreement Award and Appraisal Estimate." Diksa attached a copy of the transmittal email, the Appraisal Award, and the Appraisal Estimate. But Diksa did not receive the email forwarding the Appraisal Award from Safeco's appraiser; rather, he received it from someone else in the appraiser's office who stated, "[Safeco's appraiser] is traveling today, but asked me to send you the executed award we received after

business hours yesterday.  Please let us know if you have any questions."  Safeco's appraiser is copied on the email.  Diksa's affidavit does not conclusively establish that two members of the panel adopted the findings in the umpire's note because it, at most, leads to a mere inference that Safeco's appraiser opened the attachment, saw the umpire's note in the Appraisal Estimate, and understood those findings to be part of the Appraisal Award, among other things.  This does not satisfy Safeco's summary-judgment burden.  *See Nixon*, 690 S.W.2d at 549; *see also Ford Motor*, 135 S.W.3d at 601 ("Evidence that is so slight as to make any inference a guess is in legal effect no evidence."); *Great Am. Reserve Ins. Co.*, 391 S.W.2d at 47.  A contrary but reasonable inference is that Safeco's appraiser merely saw that he received the email from the umpire after hours stating that he attached the signed award, and that Safeco's appraiser asked a staff member to forward the email with the award without opening the attachment to verify its contents.

Indulging all reasonable inferences and resolving all doubts in Tippett's favor, we conclude that Safeco failed to meet its initial summary-judgment burden to conclusively establish that two members of the appraisal panel adopted the umpire's findings in writing.  Safeco's request for summary judgment, which it based upon its contention that it had paid the full amount owed under the Appraisal Award, hinged upon establishing this fact.  Accordingly, we conclude that the trial court erred by granting Safeco's summary-judgment motion, even if we assume that the panel had authority to make the determination of coverage allegedly contained in the umpire's

21

note. *See Durham*, 860 S.W.2d at 66; *Nixon*, 690 S.W.2d at 548–49; *Great Am. Reserve Ins. Co.*, 391 S.W.2d at 47; *Fieldtech*, 262 S.W.3d at 833.

>        **b.**    **The appraisal panel did not have authority to construe the policy and make liability determinations.**

Even if we assume that Safeco's appraiser adopted the findings in the umpire's note, we conclude that the panel did not have authority to conclusively determine any issues other than the amount of the loss; in other words, it made a coverage determination that was outside its authority.

Appraisal awards may be disregarded when they do not comply with policy terms; the award must be construed and applied in compliance with the policy even if no party seeks to disregard an appraisal award. *Tex. Windstorm Ins. Ass'n v. Dickinson Indep. Sch. Dist.*, 561 S.W.3d 263, 276 (Tex. App.—Houston [14th Dist.] 2018, pet. filed) (op. on reh'g); *see also Franco*, 154 S.W.3d at 786 ("[A]n otherwise binding appraisal may be disregarded: (1) when the award was made without authority; (2) when the award was made as a result of fraud, accident, or mistake; or (3) when the award was not in compliance with the requirements of the policy."); *MLCSV10 v. Stateside Enters., Inc.*, 866 F. Supp. 2d 691, 704–07 (S.D. Tex. 2012) (setting aside portions of award in part because appraisers made impermissible coverage decision based on a determination that "no covered event caused the ductwork damage"); *Amtrust Ins. Co. of Kan., Inc. v. Starship League City, L.P.*, No. 4:11-CV-00672, 2012 WL 2996489, at *4 (E.D. Tex. June 4, 2012) (stating that appraisal process does not

replace judicial process; a party still has the right to ask the court to interpret its rights and obligations under a policy).

### i. The policy did not authorize the appraisal panel to determine liability questions.

Safeco does not argue that the panel's authority to make the findings in the umpire's note arises from the policy. Rightly so. The appraisal clause provides that a party may invoke the appraisal process if the parties "do not agree on the amount of the loss."[8] The resulting written award then "determine[s] the amount of the loss."

Here, the policy provision that Safeco relies on does not provide that cosmetic damage is not a loss; it provides that cosmetic damage is a *loss* that is *excluded* from coverage:

PROPERTY LOSSES WE DO NOT COVER

. . . .

18.  **Cosmetic loss or damage,** meaning any loss that is limited to the physical appearance of a metal roof surface.

The policy contains many examples of "losses" that are excluded from coverage. For example, it identifies "liability *losses* we *do not cover*"; and it provides coverage for "*loss by direct force of windstorm*" or "hail" but states that these perils do not include "*loss*" to certain personal property, watercraft, and greenhouses, among other things.

---

[8]We construe insurance policies in Texas according to the rules governing contract construction. *Tex. Farm Bureau Mut. Ins. Co. v. Sturrock*, 146 S.W.3d 123, 126 (Tex. 2004).

[Emphases added.] In the section entitled, "Property *Losses* We Do Not Cover," the policy states,

> We do not cover *loss* caused directly or indirectly by any of the following excluded perils. *Such loss is excluded* regardless of the cause of *loss* or any cause or event contributing concurrently or in any sequence to the *loss*. These exclusions apply whether or not the *loss* event results in widespread damage or affects a substantial area. [Emphases added.]

Applying the four-corners rule, the parties did not intend "loss" in the appraisal clause to mean only losses for which coverage exists. *See Thompson v. Geico Ins. Agency, Inc.*, 527 S.W.3d 641, 644 (Tex. App.—Houston [14th Dist.] 2017, no pet.) ("[W]e ascertain the parties' intent by looking to only the four corners of the policy to see what the policy states without considering what the parties allegedly meant."). Rather, when determining "the amount of the loss," appraisers may both appraise losses that Safeco agrees are covered and losses that Tippett claims are covered (but that Safeco claims are excluded) when the parties value such losses differently. *See Wells*, 919 S.W.2d at 685 ("[T]he function of the appraisers is to determine the amount of damage resulting to the property submitted for their consideration."). And here, the summary-judgment record reflects that the parties had both a valuation dispute[9] and a coverage dispute—namely, whether a portion of the loss fell within the cosmetic-

---

[9]This is evidenced by the fact that the parties' pre-appraisal estimates reflected different estimates (including different unit prices) for some of the same work. In the trial court, Tippett argued that the appraisal award disposed of only the valuation dispute and not the coverage issue or liability. We conclude that her arguments in the trial court are sufficiently similar to her arguments on appeal to preserve them for our review. *See* Tex. R. App. P. 33.1, 38.1(f).

damage exclusion. Nothing in the plain language of the policy authorized the appraisers to determine whether hail damage was purely cosmetic or affects the functionality of a metal roof. This is not a determination on the amount of the loss (damages); it is a liability determination, as we explain below.

### ii. Under Texas law, appraisal panels do not make liability determinations.

Safeco relies upon *State Farm Lloyds v. Johnson* as the authority for the appraisal panel to "allocate damages between covered and excluded perils," which, in this case, conclusively determines whether the cosmetic-damage exclusion applies. We disagree with Safeco's reading of *Johnson*. Though *Johnson* may be read to expand the powers of appraisers to make causation determinations, it does not empower appraisers to make legal determinations that construe and apply policy exclusions.[10]

In *Johnson*, the issue before the Texas Supreme Court was whether the summary-judgment record established that an appraisal sought by an insured would exceed the permissible scope of appraisal. 290 S.W.3d at 888. The appraisal had not yet taken place. *Id.* The insured had filed a claim for hail damage, claiming that her entire roof needed replacement. *Id.* at 887. The insurer contended that hail damaged only the roof's ridgeline. *Id.* When the insured invoked the appraisal provision, the

---

[10]*See* Timothy Gray, G. Brian Odom, Shannon M. O'Malley, *Benefits, Pitfalls, and Trends in Property Insurance Appraisal*, 44-SPG Brief 20, 25 (2015) ("Since *Johnson*, appraisals in Texas have expanded exponentially to involve determinations by the appraisers and umpire of whether damage was caused by a covered or a noncovered peril, as well as various other disputes traditionally considered to be coverage questions outside the purview of the appraisal provision.").

insurer refused to participate, arguing that the parties' dispute involved causation and not "amount of loss" so the dispute did not fall within the scope of the appraisal clause. *Id.* at 888. After the insured filed a declaratory judgment action seeking to compel appraisal, the parties filed cross-motions for summary judgment. *Id.* The trial court agreed with the insurer that no appraisal was warranted, and the court of appeals reversed, holding that appraisal was required. *Id.* The Texas Supreme Court concluded that the record did not establish that an appraisal would exceed the permissible scope of appraisal. *Id.* at 887.

The court explained the distinction between damages questions for appraisers and liability questions for the courts. *Id.* at 889. An appraisal "binds the parties to have the extent or amount of the loss determined in a particular way, leaving the question of liability for such loss to be determined, if necessary, by the courts." *Id.* at 889 (quoting *Scottish Union*, 8 S.W. at 631); *see also Ortiz*, 589 S.W.3d at 131. The word "appraisal" generally means "[t]he determination of what constitutes a fair price; valuation; estimation of worth." *Johnson*, 290 S.W.3d at 890. The "scope of appraisal is damages, not liability." *Id.*

The Texas Supreme Court was clear about what powers appraisers do not hold: "[t]he policy directs the appraisers to decide the 'amount of loss,' not to construe the

policy or decide whether the insurer should pay." *Id.*[11] What *Johnson* wrestled with was whether appraisal should deal with questions of causation, and it determined the answer by asking whether causation involved an issue of the amount of loss or damages (which is within the purview of appraisers) or an issue of liability turning on an interpretation of the policy (which is not within the purview of appraisers). *Id.* at 890–93. The question of causation falls within an appraiser's role because "appraisers must always consider causation, at least as an initial matter." *Id.* at 893. This role is dictated by the fact that "[a]n appraisal is for damages caused by a specific occurrence, not every repair a home might need." *Id.* Thus, when assessing hail damage, "appraisers look only at damage caused by hail; they do not consider leaky faucets or remodeling the kitchen." *Id.* "Any appraisal necessarily includes some causation element, because setting the 'amount of loss' requires appraisers to decide between

___

[11]After making this statement, the court quoted both a commentator and one of the amicus briefs in the case, noting:

> *See* 15 COUCH ON INSURANCE § 213.44: ("An appraiser can make no legal determinations."); Br. of Tex. Windstorm Ins. Ass'n as Amicus Curiae Supporting Pet'rs at 8 ("In actual practice, appraisers and umpires are frequently unqualified to make complex liability determinations under an insurance policy. There is no requirement that they be licensed. Umpires are often lawyers or mediators with no particular experience or expertise in property insurance coverage or claims. Appraisers are often contractors who may be familiar with repair costs but are not qualified to make policy interpretations or to determine cause and origin of the damage being claimed. There is no explicit requirement that the appraisers and umpire inspect the property or read the policy, and many do not.").

*Johnson*, 290 S.W.3d at 890, n.23.

damages for which coverage is *claimed* from damages caused by everything else." *Id.* (emphasis added).

As *Johnson* noted, causation can implicate questions of both loss (or damage) or liability, and the line between which question causation impacts is not always clear. *Id.* at 890. Although the question of whether causation impacts damages or liability is difficult to answer in the abstract, "in actual cases, causation usually falls into one category or the other." *Id.* at 892. For instance, appraisers can decide the cost of repairs when different causes are alleged for a single injury to property, but they cannot decide causation questions if their decision would displace the court's role to determine legal questions that impact liability. *Id.* Thus, "[b]y contrast, when different types of damage occur to different items of property, appraisers may have to decide the damage caused by each before the courts can decide liability." *Id.* In that context, "courts can decide whether water or mold damage is covered," for example, "but if they can also decide the amount of damage caused by each, there would be no damage questions left for the appraisers." *Id.*

The court explained that "whether the appraisers have gone beyond the damage questions entrusted to them will depend on the nature of the damage, the possible causes, the parties' dispute, and the structure of the appraisal award." *Id.* at 893. The court provided the following additional guidance on distinguishing between damages questions for appraisers and liability questions for the courts:

> [W]hen an indivisible injury to property may have several causes, appraisers can assess the amount of damage and leave causation up to the courts. When divisible losses are involved, appraisers can decide the cost to repair each without deciding who must pay for it. *When an insurer denies coverage, appraisers can still set the amount of loss in case the insurer turns out to be wrong.* And when the parties disagree whether there has been any loss at all, nothing prevents the appraisers from finding "$0" if that is how much damage they find.

*Id.* at 894 (emphasis added) (footnotes omitted).

Indeed, the Fourteenth Court of Appeals recently surveyed the case law interpreting *Johnson*; it cited cases holding that *Johnson* should not be read as giving appraisers the power to make legal determinations:

> Several cases decided since *Johnson* confirm that, although courts afford appraisal awards due deference, appraisals do not supplant the judicial process. *See, e.g.*, [*Sec. Nat'l Ins. Co. v.*] *Waloon* [*Inv., Inc.*], 384 S.W.3d [901,] 905 [(Tex. App.—Houston [14th Dist.] 2012, no pet.)] (appraisal award, standing alone, does not determine the merits of a breach of contract claim; appraisal is limited to determining amount of loss, not whether an insurer should pay); *see also MLCSV10 v. Stateside Enters., Inc.*, 866 F. Supp. 2d 691, 704-07 (S.D. Tex. 2012) (applying *Johnson* and setting aside portions of award in which appraisers made impermissible coverage decision based on determination that "no covered event caused the ductwork damage"); *Amtrust Ins. Co. of Kan., Inc. v. Starship League City, L.P.*, No. 4:11-CV-00672, 2012 WL 2996489 (E.D. Tex. June 4, 2012), (appraisal process does not replace judicial process; party still has the right to ask a court to interpret its rights and obligations under policy); *Glenbrook Patiohome, Owners Ass'n v. Lexington Ins. Co.*, No. H-10-2929, 2011 WL 666517, at *10 (S.D. Tex. Feb. 14, 2011) (loss-valuation issues should be determined by appraisal, but coverage disputes should be determined by the court).

*Tex. Windstorm Ins. Ass'n*, 561 S.W.3d at 276. Just last year, the Texas Supreme Court again confirmed that "appraisal awards do not serve to establish a party's liability (or lack thereof)." *Ortiz*, 589 S.W.3d at 132.

### iii. The appraisal panel made a liability determination.

Unlike *Johnson*, the instant case involves no dispute about causation. The appraisers did not distinguish damages caused by hail from pre-existing damages or from damages caused by anything else. Safeco acknowledges that "hail-caused dents . . . are present on Tippett's metal roofs." This is a dispute about whether any of the damages, the cause of which is undisputed, are purely cosmetic. Safeco has denied coverage because it believes that some of the damage did not affect the functionality of the metal roofs.

Applying the principles of *Johnson* to the facts of this case, we conclude that the appraisers could determine only the amount of the loss (the loss attributed to hail damage for all property submitted for their consideration), leaving the question of liability for such losses (including the application of the cosmetic-damage exclusion) for the courts "in case [Safeco] turns out to be wrong" about its coverage position. *See Johnson*, 290 S.W.3d at 894; *see also Lundstrom v. United Servs. Auto. Ass'n-CIC*, 192 S.W.3d 78, 89 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) (holding that trial court erred in granting declaratory summary judgment in favor of insurer and entering take-nothing summary judgment against insureds because appraiser and umpire exceeded their authority when they determined that a plumbing leak did not cause the insured's loss); *Wells*, 919 S.W.2d at 684–85 ("[A]ppraisers have no power or authority to determine questions of causation, coverage, or liability . . . . [A]ppraisers are not

arbitrators. They have no power to arbitrate disputes between the property owner and the insurance company, other than to value the property damage.").

Although Safeco tries to shoehorn the facts of this case into *Johnson's* holding, that attempt fails. Safeco overreads two sentences in *Johnson* where the court stated that if "appraisers can never allocate damages between covered and excluded perils, then appraisers can never assess hail damage unless a roof is brand new. That would render appraisal clauses largely inoperative, a construction we must avoid." 290 S.W.3d at 892–93 (footnote omitted). Therefore, Safeco argues, "the appraisal panel could assess whether the hail-caused dents, which all sides acknowledge are present on Tippet's metal roofs, resulted in damage that affected the roofs' proper function. An appraisal award without such an assessment would be of little use to the parties." Safeco, however, is quoting *Johnson* out of context.

When stating that appraisers can allocate damages between covered and excluded perils, the court was commenting on the wear-and-tear exclusions in most policies. *Id.* at 892. In that context, appraisers may need to resolve a causation question when separating losses caused by a covered event (hail) from a property's pre-existing condition (wear and tear). *Id.* If appraisers were prohibited from distinguishing between hail damage and pre-existing wear-and-tear damage, then appraisal clauses would become inoperative unless a roof was brand new and had no pre-existing damage. *See id.* at 892–93. The summary-judgment record in this case does not reflect that the parties had a dispute about hail-caused damages and pre-

31

existing wear-and-tear damage. Thus, the court's discussion in *Johnson* about the appraisers' ability to "allocate damages between covered and excluded perils" is inapplicable.

Safeco's position is also in direct conflict with the Texas Supreme Court's emphasis that "[t]he policy directs the appraisers to decide the 'amount of loss,' *not to construe the policy* or decide whether the insurer should pay." *Id.* at 890 (emphasis added); *see also Amine*, 2007 WL 2264477, at *5 (stating that the appraisal process "does not resolve coverage issues"); *Johnson v. State Farm Lloyds*, 204 S.W.3d 897, 902 (Tex. App.—Dallas 2006), *aff'd*, 290 S.W.3d 986 (Tex. 2009) ("It is certainly not [the appraisers'] function to resolve questions of coverage and interpret provisions of the policy."). Appraisers cannot rewrite the policy. *See Johnson*, 290 S.W.3d at 893.

Here, the cosmetic-damage exclusion excluded property losses consisting of "cosmetic loss or damage, meaning any loss that is limited to the physical appearance of a metal roof surface." In a message informing Tippett of its amendment to the policy to include the exclusion, Safeco stated, "Damage to a metal roof that alters the appearance of the roof, but not the functionality is now specifically excluded." The policy does not define "cosmetic" damage or provide any standard for "functionality" of a metal roof. The umpire determined that "hail did not damage the . . . roof in a manner that caused or contributed to any interior leaking" and that "hail denting will not cause a loss of the intended water-shedding functionality of the aluminum shakes." Safeco argued that this constituted a finding that the hail denting

32

"constituted non-functional/cosmetic damage only." But the cosmetic-damage exclusion says nothing about damage that causes or contributes to "interior leaking" or a "loss of the intended water-shedding functionality of the aluminum shakes." For the appraisers to make any findings about whether any damage was cosmetic or functional, they necessarily had to construe (or rewrite) the policy, contrary to *Johnson*. *See* 290 S.W.3d at 890.

Safeco argued that the cosmetic-damage exclusion is not ambiguous, claiming that courts interpreting cosmetic-damage exclusions have held that damage that affects the roof's proper function is not cosmetic while damage that only affects its appearance is. But the definition offered by Safeco still leaves unanswered the question of what constitutes damage that affects a metal roof's "proper function."[12]

---

[12]We note that Safeco's own summary-judgment evidence included letters from Safeco and a report from an engineer hired by Safeco that identified multiple aspects of purported "functional" damage that are not addressed by the umpire's note, including damage that affects the "expected life cycle of the metal roof system," the "useful service life" of the shingles, or the "integrity" of the metal roof covering. Additionally, Safeco's own summary-judgment evidence reflected that pre-appraisal, it had determined that at least some of the hail damage to Tippett's dwelling roof was not excluded by the cosmetic-damage exclusion and had paid Tippett $2,299.28 after "advising [Tippett] of Safeco's coverage position." Yet the umpire's note applied to all hail damage to Tippett's dwelling roof, according to Safeco. Thus, for these additional reasons, Safeco's own summary-judgment evidence established the existence of a genuine issue of material fact on the applicability of the cosmetic-damage exclusion, making summary judgment improper. *See* Tex. R. Civ. P. 166a(c); *Armbruster v. Mem'l Sw. Hosp.*, 857 S.W.2d 938, 941 (Tex. App.—Houston [1st Dist.] 1993, no writ) ("The movant's own evidence may establish the existence of a genuine issue of material fact on the plaintiff's claim.").

Here, for some reason not included in the record, the umpire included a note that Safeco essentially used in an attempt to estop litigation on the applicability of the cosmetic-damage exclusion. But it is well established that appraisal serves only to estop litigation on the amount of the loss, not liability. *Johnson*, 290 S.W.3d at 889. Safeco's post-appraisal payment does not reflect a resolution to accept the panel's determination on the amount of Tippett's loss. *See Barbara Techs.*, 589 S.W.3d at 820 ("An insurer's payment [following appraisal, often without admitting or specifically disclaiming liability, is similar to a settlement and presumably] results from a calculated risk assessment that paying the appraisal value will ultimately be less risky or costly than litigating the claims to determine liability."). Rather, Safeco made a second payment on the losses that it did not dispute based on the amounts determined by the panel—and continued to deny liability (and refuse payment) for the rest based on the exclusion.

Applying the principles set forth in *Johnson* to the instant case, we conclude that the parties' dispute about whether the hail damages affected the functionality of Tippett's metal roofs was a liability question for the courts and not a damages question for the appraisers. Safeco could not invest the appraisers with the power to make judicial determinations by invoking the appraisal process and obtaining a finding on the applicability of the cosmetic-damage exclusion.

On the facts presented and in the context of this dispute at issue, and assuming that Safeco's appraiser adopted the findings in the umpire's note, after indulging all

34

reasonable inferences and resolving all doubts in the nonmovant's favor, we hold that the panel exceeded its authority when it made findings about whether the hail damage caused or contributed to any interior leaking or will cause a loss of the intended water-shedding functionality of the aluminum shakes. *See Tex. Windstorm Ins. Ass'n*, 561 S.W.3d at 276; *Franco*, 154 S.W.3d at 786. The appraisers could determine the amount to repair or replace Tippett's roofs, but by determining whether any hail damage affected the functionality of the roofs it left no liability question for the courts, contrary to *Johnson. See* 290 S.W.3d at 892–93.

Accordingly, the trial court erred by granting summary judgment based on Safeco's reliance upon the umpire's note to prove the applicability of the cosmetic-damage exclusion when claiming it had paid the full amount owed under the Appraisal Award as a matter of law. Safeco did not conclusively prove that it paid the full amount of the Appraisal Award and thus did not meet its summary-judgment burden to conclusively negate the breach and injury elements to Tippett's contract claim. Thus, Safeco also did not establish that it was entitled to judgment as a matter of law on Tippett's contract and extra-contractual claims, and the trial court erred by granting summary judgment dismissing Tippett's claims. We sustain Tippett's first issue with respect to Safeco's traditional summary-judgment motion.

**c. Our resolution of Tippett's first issue regarding Safeco's traditional motion is dispositive of her second issue regarding Safeco's no-evidence motion.**

Tippett's second issue on appeal is whether she "presented more than a scintilla of evidence to support the challenged elements of her claims for breach of contract and unfair settlement practices under the Texas Insurance Code." We do not reach Tippett's second issue because, as we explain above, Safeco made its no-evidence motion contingent upon establishing that it had paid the full amount owed under the Appraisal Award. Our ruling on Tippett's first issue is dispositive of her second issue. *See* Tex. R. App. P. 47.4; *D.R. Horton-Tex.*, 416 S.W.3d at 225 n.7.

## THE TRIAL COURT DID NOT ERR BY DENYING TIPPETT'S MOTION FOR PARTIAL SUMMARY JUDGMENT BECAUSE SHE FAILED TO CONCLUSIVELY PROVE HER TPPCA CLAIM AS A MATTER OF LAW

### A. Standard of review

Within her first issue, Tippett argues that the trial court erred by denying her cross-motion for partial summary judgment on her TPPCA claim.

When both parties move for summary judgment and the trial court grants one motion and denies the other, the reviewing court should review both parties' summary-judgment evidence and determine all questions presented. *Mann Frankfort*, 289 S.W.3d at 848. We should then render the judgment that the trial court should have rendered. *See Myrad Props., Inc. v. LaSalle Bank Nat'l Ass'n*, 300 S.W.3d 746, 753 (Tex. 2009); *Mann Frankfort*, 289 S.W.3d at 848. A plaintiff is entitled to summary judgment on a cause of action if it conclusively proves all essential elements of the

36

claim. *See* Tex. R. Civ. P. 166a(a), (c); *MMP, Ltd. v. Jones*, 710 S.W.2d 59, 60 (Tex. 1986). Our standard of review is governed by the same principles set forth above.

**B.      The trial court did not err by denying Tippett's motion for partial summary judgment on her TPPCA claim.**

Safeco argues that the trial court did not err by denying Tippett's request for summary judgment because she did not meet her summary-judgment burden. We agree.

To prevail under a TPPCA claim, an insured must establish (1) the insurer's liability under the insurance policy and (2) that the insurer has failed to comply with one or more sections of the TPPCA in processing or paying the claim. *Barbara Techs.*, 589 S.W.3d at 813 (citing Tex. Ins. Code Ann. § 542.060(a)). "If the insured fails to establish either that the insurer is liable for the claim or that the insurer failed to comply with a provision of the TPPCA, the insured is not entitled to TPPCA damages." *Id.* "Thus, the basis for liability for TPPCA damages is that the requisite time has passed and the insurer was ultimately found liable for the claim." *Id.* (quotation marks omitted).

In seeking summary judgment on her TPPCA claim, Tippett argued that Safeco violated Section 542.058 of the Texas Insurance Code, which concerns delayed payment of claims, *see* Tex. Ins. Code Ann. § 542.058, and that she is entitled to an award of actual damages in the amount of the Appraisal Award, statutory interest, and attorneys' fees. *See id.* § 542.060. Tippett argued that "the [A]ppraisal [A]ward stands

37

as evidence in fact that [Safeco] violated the TPPCA by failing to pay the amount due under the policy for which [it was] ultimately liable."

As Tippett herself points out on appeal, we recently addressed a similar case in *Lambert v. State Farm Lloyds*, No. 02-17-00374-CV, 2019 WL 5792812 (Tex. App.—Fort Worth Nov. 7, 2019, pet. filed) (mem. op.). In that case, the Lamberts submitted a claim for damages under their homeowner's-insurance policy for hail and wind damages following a storm. *Id.* at *1. After State Farm's initial inspection, it determined that the damages were below the policy's deductible and paid nothing. *Id.* The Lamberts asked State Farm to re-inspect their home, which State Farm did. *Id.* State Farm's second inspection found more damages and netted the Lamberts $1,700 after subtracting depreciation and the deductible. *Id.* The Lamberts sued State Farm for, among other things, violations of the TPPCA. *Id.* State Farm invoked the appraisal process and the appraisal panel ultimately set the amount of loss to the Lamberts' home at $99,112.72 (RCV) and $70,965.54 (ACV). *Id.* State Farm deducted depreciation and the past payment and paid the Lamberts $63,404.63. *Id.*

The parties in *Lambert* filed competing summary-judgment motions, and the trial court ultimately denied the Lamberts' motion and granted State Farm's motion in its entirety. *Id.* at *2. On appeal to this court, the Lamberts argued that State Farm failed to follow the TPPCA's prompt-payment deadlines and that they were entitled to statutory interest and attorney's fees. *Id.* at *3. We disagreed. We explained that in

*Barbara Technologies*, the Texas Supreme Court offered guidance on addressing how the appraisal process affects the TPPCA's timing guidelines. *Id.*

In *Barbara Technologies*, State Farm twice denied its insured's claim for storm-related damages because the damages did not exceed the insured's deductible. *Barbara Techs.*, 589 S.W.3d at 809. When Barbara Technologies sued, State Farm invoked the appraisal provision and paid the amount of the Appraisal Award. *Id.* at 809–10. Barbara Technologies nonetheless claimed that State Farm had failed to comply with the TPPCA's 60-day time limit for payment. *Id.* at 810. But the court determined that because State Farm had not accepted liability under the policy and had not yet had its liability adjudicated one way or another, Barbara Technologies was not entitled to TPPCA damages as a matter of law. *Id.* at 827. However, it also concluded that State Farm's invoking appraisal and promptly paying the resulting award did not automatically exempt it from TPPCA damages either. *Id.* For those reasons, the court remanded the case for the trial court to first determine liability and then sort through TPPCA timing requirements. *Id.* at 828.

Based on the analysis in *Barbara Technologies*, we concluded that *Lambert* was "in the same procedural posture" and should be remanded for the same reasons. *Lambert*, 2019 WL 5792812, at *4. The same analysis applies here.

Like in *Lambert*, Tippett submitted a claim for damages under her homeowner's-insurance policy for hail damages following a storm. After Safeco's initial inspection, it determined that the damages were below the policy's deductible

and paid nothing. After Safeco received a notice of representation from Tippett's public adjuster, Safeco re-inspected Tippett's property. Safeco's second inspection netted Tippett $2,299.28 after subtracting depreciation and the deductible. Dissatisfied, Tippett sued Safeco for, among other things, violations of the TPPCA. Safeco invoked the appraisal process, and the appraisal panel ultimately set the amount of loss to Tippett's property at $59,794.89 (RCV) and $56,612.82 (ACV). This is procedurally the same as *Lambert* and *Barbara Technologies*. The fact that Safeco's post-appraisal payment was not for the full amount of the appraisal award does not alter the analysis.[13]

Applying the same reasoning in *Lambert*, and in accordance with *Barbara Technologies*, we conclude that Tippett failed to meet her summary-judgment burden to prove that Safeco was liable for a claim under the policy and to prove that Safeco violated a TPPCA provision as a matter of law. *See Barbara Techs.*, 589 S.W.3d at 813, 826–27; *Lambert*, 2019 WL 579812, at *3–4. Thus, the trial court did not err by

---

[13]Tippett argues on appeal that Safeco accepted liability when it paid her policy benefits. But Tippett did not argue in the trial court, as a ground for establishing her entitlement to judgment on her TPPCA claim as a matter of law, that liability under the policy was conclusively established because Safeco accepted the claim, like she does on appeal. Rather, she argued that it can be *inferred* from Safeco's *invocation of the appraisal process* that it believed itself to be liable under the policy. We cannot reverse a trial court's denial of a summary-judgment motion on grounds not raised in the trial court. *See* Tex. R. App. P. 33.1. And the Texas Supreme Court recently made it clear in *Barbara Technologies* that merely invoking the contractual appraisal processes does not determine liability on a claim. 589 S.W.3d at 827.

denying Tippett's motion for partial summary judgment. We overrule Tippett's first issue with respect to the ruling on her motion.

## CONCLUSION

Having sustained Tippett's first issue with respect to Safeco's motion; having overruled her first issue with respect to Tippett's own motion; and having not reached her second issue; we affirm the trial court's denial of Tippett's motion for partial summary judgment and reverse the summary judgment for Safeco on Tippett's claims for breach of contract, breach of the duty of good faith and fair dealing, fraud, and her claims for violations of Chapter 541 of the Insurance Code, the DTPA, and the TPPCA; and we remand this case to the trial court for proceedings consistent with this opinion.

/s/ Dabney Bassel

Dabney Bassel
Justice

Delivered: February 20, 2020